fault in his payments of the additional amounts of beer purchased, the brewing company did all it was called upon to do legally or morally, it would seem. It offered to assign to plaintiff the chattel mortgage it held, but plaintiff declined to accept it. It had already paid plaintiff all that it had received in the way of additional payments. It could not assign to him the lease of the premises, because it could not get the assignment from Mallon. The chattel mortgage was admittedly insufficient security for the amount involved. Plaintiff declined to accept it for that expressed reason, and it was so regarded by the company. It is, therefore, not apparent upon what principle, legal or equitable, the defendant company can be held liable for the payment of the balance of the purchase price, when it has neither received the prerequisite amount from Mallon, nor an essential part of the security agreed to be given it by Mallon as a part of the consideration inducing it to enter into the tripartite agreement. The defendant company has advanced plaintiff a large amount of money above what he was entitled to receive from it, and should recover the excess in the manner indicated in the report.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Simon Fleischmann and Harry L. Taylor, for appellant.
Robert F. Schelling, for respondents.

PER CURIAM. Judgment affirmed, with costs, on the opinion of Lyman N. Baker, referee.

RUMSEY, J., dissents.

---

(35 Misc. Rep. 513.)

VILLAGE OF MECHANICVILLE v. STILLWATER & M. ST. RY. CO.

(Supreme Court, Special Term, St. Lawrence County. July, 1901.)

1. STREET RAILROADS—FRANCHISES—STREETS—PAVING—COMPANY'S LIABILITY.
    A street railroad company's franchise granted in 1882 and renewed in 1894 required the company to pave the street between the rails and for 20 inches outside of them on both sides of the track with "small stone," and "that the same should at all times be kept in good condition." In 1889 the village required the corporation to pave such space with brick, and, the company refusing to do so, the village did the work at its own expense. *Held*, that the village was entitled to recover such expenses from the railroad company, since the village was entitled to exact what it deemed a suitable pavement in 1899, and was not limited to a pavement composed of "small stone."

2. SAME—MUNICIPAL CORPORATION—FRANCHISES—POWERS.
    A franchise granted by village trustees to a railroad company, requiring the company only to pave the streets occupied by it with "small stone," is no defense to an action by the village to recover the cost of paving such streets with brick, after the company had refused to do so, since the trustees were persons of limited powers, and could not give up the streets to private corporations, nor surrender the rights of the public to have the streets kept in proper condition for use.

3. SAME—CORPORATE FRANCHISE—STATUTES—CONSTITUTIONAL LAW—OBLIGATION OF CONTRACT.
    That a street railroad company by its franchise was required only to pave the part of the street which it occupied with "small stone" did not render Laws 1892, c. 676, § 98, requiring a street surface railway corporation to keep its street way in repair as and when directed by the local authorities, unconstitutional as to such street railway, as impairing the obligation of the railway's contract with the village as evidenced by its charter.

**4. SAME—PRE-EXISTING CONTRACTS—RATIFICATION—EFFECT.**
> Where a street railway company's charter only required the company to pave the streets occupied by it with "small stone," which charter was renewed, the passage of Laws 1901, c. 494, § 1, ratifying pre-existing contracts between street railway corporations and villages, constituted no defense to an action by the village to recover the cost of paving the railroad company's portion of the street with brick, after the company had refused to do such paving as directed.

Action by the village of Mechanicville against the Stillwater & Mechanicville Street Railway Company to recover the costs of repaving the streets in such village contiguous to defendant's tracks. Judgment for plaintiff.

D. A. Lockwood, for plaintiff.
Thomas O'Connor, for defendant.

RUSSELL, J.  The plaintiff seeks to recover the cost of repaving the streets in the village of Mechanicville contiguous to the defendant's tracks, made necessary by the maintenance and operation of the defendant's railway.  The defendant objects on the ground of nonliability, because the notice to repair was informal, and did not specify the kind of bricks or blocks desired, and required the work to be done under the supervision of the village engineer.  The defendant also claims that a contract was made and a franchise given, specifying the kind of paving to consist of small stone between the rails and 20 inches outside, which could not be altered by the legislature or by the requirement of the situation, and that chapter 494 of the Laws of 1901 (section 1) ratifies pre-existing contracts with street railway companies in cities of the third class, towns, or villages.

Two franchises were given to the defendant, and contracts made by it with the village, in pursuance of the resolution of the trustees. The first was November 20, 1882, which provided as follows:

"Fifth. The space between the rails and the space of at least twenty inches wide outside the said rails on both sides of the track shall be paved with small stone, and the same shall at all times be kept in good condition."

November 26, 1894, a similar franchise was given, embracing a like clause to the one quoted.  On the 29th of August, 1899, a notice was served by the village requiring a six-inch excavation, filled in with sand or gravel, and covered with vitrified paving brick.  The railway company declined to conform to the notice, and did not attempt to do the paving even in its own way, so that the village was compelled to do the work at its own expense.  No previous controversy seems to have arisen between the parties, but it may be fairly assumed, if the village authorities had any right to require suitable pavement, they had the power to take into consideration all of the factors necessary to the exigencies then existing for the service of the public, the needs of a growing community for the proper passage along the public streets, and the care required to allow vehicles a smooth way and proper ability to avoid cars propelled by electric power in these days, when street railway cars are no longer moved by the lingering horse.  It is also well to remember that no village trustees, who have limited powers, can withdraw from the public the use of the

streets to give them up to private corporations. Such powers are held in trust for the public benefit, and cannot be abrogated or delegated to private parties. Milhau v. Sharp, 27 N. Y. 611, 84 Am. Dec. 314; approved, Story v. Railroad Co., 90 N. Y. 158, 161, 43 Am. Rep. 146. It is also well to bear in mind what was the situation and what the rights of the parties had there been no provision in regard to pavement or keeping the streets in good condition. Here was a railway company asking, for its own private emolument, the right to pass along the streets dedicated to the use of the public. It was seeking a privilege which could be of no service to the village, except as it conveyed passengers for compensation. Its use of that street would necessarily be limited to the least possible disturbance of the public uses. If it tore up any portion, the obligation of restoration lay upon it. If any part got out of repair within the fair limits of its own uses, and because of its interference with the ordinary public service, the proper repairs should be made by the privileged and exceptional user. The parties, therefore, gave or received a franchise or contract, the name of which is immaterial, under the recognized situation and obligation as then apparent. They confirm such obligation by the provision that the space the railroad used should be then paved with small stone, but also added "that the same should at all times be kept paved and in good condition." This construction is recognized by the legislature in its revision of the railroad law (Laws 1892, c. 676, § 98). It is there declared to be a duty to the public on the part of the railway company to keep the street way in permanent repair between the tracks and two feet outside, under the supervision of the proper local authorities, whenever required by them to do so, and in such manner as they prescribe. Provision is also made for the method of enforcement. This act is proper and forceful. Conway v. City of Rochester, 157 N. Y. 33, 51 N. E. 395; People v. City of Utica, 45 App. Div. 356, 61 N. Y. Supp. 31.

The case of Gilmore v. City of Utica, 121 N. Y. 561, cited by the defendant's counsel, does not conflict with these assumptions. The court of appeals there recognized the power of the common council to act under the right conferred upon them by the legislature, but held that, if the common council chose to not exercise their discretion, taxpayers who were assessed for improvement could not complain in order to relieve themselves.

Nor does the case of City of Binghamton v. Binghamton & P. D. Ry. Co., 61 Hun, 479, 16 N. Y. Supp. 225, if of authority, furnish a precedent to overthrow the power of the common council or village trustees to provide suitable pavement. In that case the evidence showed the street to have had no paving at all at the time the contract was made, and the general term of the fourth department decided that the transition from a dirt road to concrete pavement was too much in the nature of a burden to be justified. The condition of the franchise here provided for pavement, and adopted for the then present small stone as suitable to the situation. It would be a dangerous conclusion to reach to hold, as asked by the defendant's counsel, that this provision gave the railway company the right to pave the streets with small stone for all future generations, whatever

the emergency which excited other requirements, in the exercise of the judicial discretion confided to the trustees acting in the interest of the public. Such a principle would also determine that, even if the village trustees waived the obligation of the railway company, that company could prevent by law the interruption of its business through the digging up of the street and putting in another pavement suitable to the conditions necessary, even though done at the expense of the village. But the remainder of the condition agreed to provided that the space referred to should at all times be kept paved in such manner as made a good condition. It may very easily be presumed, from the lapse of 17 years, such a condition of pavement required other than small stone, and that neither of the parties expected or intended that the particular kind of material then to be used, with horse cars running, and, perhaps, a small amount of business transacted in the village, was preserved by choice then made and operative forever. Would the street railway company maintain a different position if it found the use of small stone derogatory to its capacity to conveniently receive passengers and propel its cars by electric power? The right of our legislature, preserved by the constitution, to regulate the reasonable use of corporate privileges, does not violate the provision of the federal constitution forbidding the impairment of the obligation of contracts. Every corporation takes its right even to exist subject to this power of the legislature, and certainly do those who ask for and receive from the legislature the privilege of limited responsibility, and the right to take property against the will of the owner, within the shield of corporate action. And certainly the act of 1901, in reaffirming contracts, does not add to the advantages of the corporation by giving to it more than does the contract itself, and the implied understanding upon which it was based originally conferred.

Judgment is directed for the plaintiff for $1,209, and interest from December 1, 1899, besides costs.

Judgment for plaintiff, with costs.