THE CITY OF ROCHESTER, Appellant, *v.* ROCHESTER RAILWAY COMPANY, Respondent.

*Railroad — consent by a municipality to the use of its streets — what constitutes a contract between the municipality and the railroad company as to the latter's obligation to keep the streets in repair — a law impairing its obligations is unconstitutional — construction of the provisions of the Railroad Law relating thereto — what is not a waiver of such contract rights by the railroad company.*

The ordinances or resolutions of the common council of a city consenting to the use of its streets by a railroad corporation, when accepted by the corporation, constitute a contract.

An ordinance passed by the common council of the city of Rochester January 12, 1869, in reference to the Rochester City and Brighton Railroad Company provided as follows: "Said company shall, as soon after the adoption of this ordinance as the condition of the streets through which their track is laid will permit, put the surface of said streets inside the rails and for one foot outside thereof, in good and thorough repair under the direction of the committee on streets and bridges of the common council, and shall thereafter keep said streets in good repair inside its tracks or between the rails of their track, only during the term of five years, and whenever it becomes necessary to improve by ordinance or otherwise, any of the streets through which their track is laid, with a new or permanent improvement, said company shall not be required to make any part or portion thereof, nor bear any part or portion of the expense of making the same, during the term of five years from the adoption of this ordinance."

By chapter 34 of the Laws of 1869 it was enacted: "§ 5. Said company shall put, keep and maintain the surface of the streets inside the rails of its tracks in good

and thorough repair, under the direction of the committee on streets and bridges of the common council of said city of Rochester; but whenever any of said streets are by ordinance or otherwise permanently improved, said company shall not be required to make any part or portion of such improvement, or bear any part of the expense thereof, but it shall make its rails in such street or streets conform to the grade thereof."

*Held,* that the city ordinance and the act of the Legislature constituted a contract between the city and the railroad company, from the provisions of which neither was at liberty to depart without the consent of the other, and that such contract could not be impaired by subsequent legislation;

That from the time of the passage of the ordinance of 1869 to May 6, 1884, the date of the enactment of chapter 252 of the Laws of 1884, providing for the construction, extension, maintenance and operation of street surface railroads, the Rochester City and Brighton Railroad Company was not required to make or bear the expense of any part or portion of any permanent improvement of the streets in which its tracks had been laid or any extensions thereof prior to May 6, 1884;

That section 9 of chapter 252 of the Laws of 1884, relating to street surface railroads, which provides: "§ 9. Every such corporation incorporated under, or constructing, extending or operating a railroad constructed or extended under the provisions of this act, within the incorporated cities and villages of this State, shall also whenever, and as required, and under the supervision of the proper local authorities have and keep in permanent repair the portion of every street and avenue between its tracks, the rails of its tracks and a space two feet in width outside and adjoining the outside rails of its track or tracks so long as it shall continue to use such tracks so constructed under the provisions of this act," did not apply to the existing lines of a street railroad corporation organized previous to the enactment of that statute, but only to extensions of such existing lines thereafter constructed;

That, assuming that section 9 was intended to apply to the entire railroad of any existing street surface railroad company extending its lines under the provisions of the act of 1884, the section was unconstitutional with respect to the Rochester City and Brighton Railroad Company, in that it violated the existing contract, embodied in the ordinance of 1869, between the city of Rochester and the Rochester City and Brighton Railroad Company;

That the railroad company did not waive the right secured to it by the ordinance of 1869 to be exempt from the payment of any part of the cost of laying new pavements in streets in which its railroad had been laid prior to the enactment of the statute of 1884, by assenting to the terms and conditions upon which the city, in December, 1894, confirmed the location of the railroad company's tracks, one of which conditions was that the railroad company should comply with article 4 of the General Railroad Law (Laws of 1890, chap. 565), which is a codification of chapter 252 of the Laws of 1884;

That the special acts passed in 1899 and 1901, by which the Legislature assumed to authorize the city of Rochester to assess upon the Rochester Railway Company a portion of the expense of laying new pavements in streets in which its

predecessor, the Rochester City and Brighton Railroad Company, had obtained its franchise and constructed its road prior to the enactment of chapter 252 of the Laws of 1884, were void in that they impaired the contract between the railroad company and the city embodied in the ordinance of 1869.

APPEAL by the plaintiff, The City of Rochester, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Monroe on the 18th day of April, 1904, upon the decision of the court rendered after a trial at the Monroe Special Term, with notice of an intention to bring up for review upon such appeal an order entered in said clerk's office on the 18th day of April, 1904, granting the defendant an extra allowance.

*W. W. Webb,* for the appellant.

*Charles J. Bissell,* for the respondent.

Judgment and order affirmed, with costs, on opinion of NASH, J., delivered at Special Term.

All concurred.

The following is the opinion of NASH, J., delivered at the Monroe Special Term :

NASH, J. :

This action is brought to recover of the defendant the expense of paving between the tracks, the rails of the tracks and two feet outside of the tracks of the defendant's railway, on North St. Paul street and Park avenue in the city of Rochester.

In the case of *Conway* v. *City of Rochester* (157 N. Y. 33), an action brought by a taxpayer to restrain the letting of the contract to pave Lyell avenue, on the ground that the city authorities had omitted to require the railway company to pave that portion of the street between the tracks, the rails of the tracks and two feet outside, it was held that the provision of section 98 of the Railroad Law (Laws of 1890, chap. 565, § 98, as amd. by Laws of 1892, chap. 676), which requires that every street surface railroad corporation, so long as it shall continue to use any of its tracks in any street, avenue or public place in any city or village, shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks and two feet in width out-

side of its tracks, under the supervision of the proper local authorities, includes repairing with new material, and was in full force and effect as to all of the streets in which the Rochester Railway Company owned and operated a street railway.

The Rochester Street Railway Company was not a party to that action, and upon the facts which now appear claims that as to the streets for the expense of paving which this action is brought, the statute is inoperative and void, for the reason that it impairs the obligation of certain existing contracts operative as between the city and the railway company.

On or about May 31, 1862, the Rochester City and Brighton Railroad Company was duly incorporated under and pursuant to the provisons of the General Railroad Law of 1850 (Laws of 1850, chap. 140, as amd.). The route described in the articles of association of the Rochester City and Brighton Railroad Company is identical with certain of the routes described in the articles of association of the defendant.

On or about the 24th day of June, 1862, the common council of the city of Rochester, in the exercise of the authority conferred upon it by the General Railroad Law of 1850, consented to the construction by the Rochester City and Brighton Railroad Company of a street surface railroad upon the routes designated in its articles of association, and one of the conditions of the grant was that the grantee should improve with suitable materials as required by the common council of the city, and in a proper manner between its tracks, the rails of its tracks and for two feet four inches outside thereof, and should keep the surface of the street inside the rails and for two feet four inches outside thereof in good repair. Thereafter and on the 8th day of July, 1862, said Rochester City and Brighton Railroad Company duly accepted the grant, subject to the provisions and restrictions therein contained.

On or about the 16th day of October, 1862, the Rochester City and Brighton Railroad Company mortgaged its rights, privileges, property and franchises to Hobert F. Atkinson, as trustee. This mortgage was duly foreclosed and at the foreclosure sale the rights, privileges, property and franchises of the Rochester City and Brighton Railroad Company were purchased by one Chauncey B. Woodworth.

After the acceptance of said franchise from the city of Rochester, and before default in the fulfillment of the conditions of said mortgage, the said Rochester City and Brighton Railroad Company proceeded to and did construct its said railroad in a number of the streets named in the said resolution of the common council, and in its articles of association, and thereafter it operated its cars thereon, and duly complied with all the provisions of said ordinance.

On or about March 5, 1868, pursuant to the statutes of the State, Mr. Woodworth duly associated with himself as such purchaser certain persons, and duly incorporated a company by the name of the Rochester City and Brighton Railroad Company, for the purpose of operating the railroad theretofore operated by its predecessor corporation, the Rochester City and Brighton Railroad Company.

By the terms of these last articles of association the company was to continue for ninety-nine years.

Immediately after the incorporation of the new corporation known as the Rochester City and Brighton Railroad Company by the purchaser and his associates, the new company petitioned the common council, protesting against the onerous condition of the resolution of 1862, above mentioned, and setting forth the inability of the new corporation to proceed with the operation of the railroad subject to such conditions, and the fact that the road had never paid, owing to the existence of such conditions. Thereafter and for the space of upwards of a year the question was debated in the common council, committees appointed and various hearings had and proofs offered by the company as to the expense of building, maintaining and operating the road, and finally the common council on the 12th day of January, 1869, duly amended section 2 of the ordinance of 1862 so as to read as follows: "The track of said railroad shall be laid so as to permit the free passage of vehicles and carriages over the same, and the rails shall be laid even with the surface of the streets and shall conform to the grades thereof as now established, or as they shall from time to time be established or altered. Said company shall, as soon after the adoption of this ordinance as the condition of the streets through which their track is laid will permit, put the surface of said streets inside the rails and for one foot outside thereof, in good and thorough repair under the direction of the committee on

streets and bridges of the common council, and shall thereafter keep said streets in good repair inside its tracks or between the rails of their track, only during the term of five years, and whenever it becomes necessary to improve by ordinance or otherwise, any of the streets through which their track is laid, with a new or permanent improvement, said company shall not be required to make any part or portion thereof, nor bear any part or portion of the expense of making the same, during the term of five years from the adoption of this ordinance."

Shortly after the adoption of said resolution the Rochester City and Brighton Railroad Company caused to be prepared and submitted to the city authorities a proposed act of the Legislature, legalizing the action of the common council, and the same was transmitted to the common council by the mayor of the city, with a written request that the common council by resolution approve and direct the clerk to transmit the bill to the Legislature, whereupon the common council adopted the following resolution : " *Resolved*, that the clerk of this board be authorized to transmit a copy of the bill relating to street railroads presented by the mayor to this board, to the Legislature, requesting that body to legalize the action of the common council by the passage of said bill."

On or about the 27th day of February, 1869, said act was passed by the Legislature and duly signed by the Governor, and is entitled, " An Act for the relief of ' The Rochester City and Brighton Railroad Company,' " and is known and designated as chapter 34 of the Laws of 1869.

The provision of the act of 1869 is as follows :

" § 5. Said company shall put, keep and maintain the surface of the streets inside the rails of its tracks in good and thorough repair, under the direction of the committee on streets and bridges of the common council of said city of Rochester; but whenever any of said streets are by ordinance or otherwise permanently improved, said company shall not be required to make any part or portion of such improvement, or bear any part of the expense thereof, but it shall make its rails in such street or streets conform to the grade thereof."

Thereafter the said Rochester City and Brighton Railroad Company continued to maintain and operate its street surface railroad

under the general statutes of the State of New York, and with the consent of the common council extended its railroad into many other streets and parts of streets in the city of Rochester, incurring thereby large expense and expending large sums of money therefor, the exact amount of which does not appear. The company kept in repair the pavement as required, but whenever a street was improved by a new pavement it was not called upon by the authorities of the city of Rochester to make or pay for any part of such improvement. On the 18th of May, 1880, the common council of the city of Rochester re-enacted the ordinance of 1862 as amended in 1869.

On the 29th of March, 1887, the common council of the city passed an ordinance in relation to street railroads, section 2 of which ordinance is as follows :

" Section 2. The track of said railroad shall be so laid as to permit the free passage of vehicles and carriages over the same, and the rails shall be laid even with the surface of the streets and avenues, and shall conform to the grades thereof, as now established, or as they shall from time to time be established or altered. As soon after the adoption of this ordinance as the condition of the streets and avenues, through or along which any street surface railroad track is now laid will permit, the surface of such streets and avenues inside the rails of all tracks authorized to be laid prior to May 6th, 1884, and between the tracks and rails of such tracks and for a space two feet in width outside and adjoining the outside rails of the tracks of any and all extensions or branches of any railroad authorized to be constructed since May 6th, 1884, shall be put in good and thorough repair by the company, under the direction of the Executive Board of said city, and thereafter at all times the same shall be in like manner and degree kept and maintained ; as to tracks authorized to be constructed or laid prior to the 6th day of May, 1884, the surface of said streets and avenues inside and between the rails thereof, and roads, and any and all extensions and branches of any roads authorized to be constructed or laid since May 6th, 1884, between the tracks and the rails of the tracks, and a space two feet in width outside and adjoining the outside rails of the track or tracks."

On the 21st of January, 1890, the Rochester City and Brighton Railroad Company petitioned the common council for permission to

change its motive power from horse to the overhead system of electricity, commonly known as the "trolley system." The prayer of the petition was duly granted by resolution of the common council in which it was provided " that the consent and permission of the city of Rochester is hereby granted to the Rochester City & Brighton Railroad Company, its successors and assigns, in addition to the rights, privileges and franchises now possessed by it, to establish, construct, maintain, operate and use the overhead single trolley electric system of motive power, so called, in the operation of its cars, in and upon each and all of the streets, avenues and public places in the city of Rochester, in, along, through and upon which said company has constructed and is now maintaining and operating a street surface railroad, and to construct, set, lay, maintain and use the poles, wires, appliances and such electrical appliances and apparatus, and to make the underground and surface alterations in and on each and all of the said streets, avenues and public places so far as necessary for that purpose ; but said company, its successors and assigns, shall not have the right to construct and operate said electric railroad in any street until the requisite consents of property owners on such street, avenue or place, and the consent of the Board of Railroad Commissioners of the State of New York shall be obtained as required by law."

The material to be used and the manner of construction and maintenance were particularly set forth in the resolutions, and it was further provided that, before the grant and consent should become operative the said company should deliver to and leave with said committee a written agreement with the city to accept and in each and every particular comply with each and all of the provisions contained in the resolutions, and to well and truly, at all times, comply with all ordinances and resolutions of the common council of said city not in conflict therewith, which had at any time before or which might at any time thereafter be passed, relating to the rate of speed, etc., and the general repairs of the streets within and for two feet outside of and adjoining said company's track or tracks.

In accordance with and pursuant to said resolutions the Rochester City and Brighton Railroad Company on the 25th of February, 1890, made and entered into the proposed contract in writing, by which the company accepted the conditions imposed, and agreed to comply

with all the ordinances and resolutions of said common council not in conflict with said resolutions, which had at any time before or which might be at any time thereafter passed, relating to the rate of speed, etc., and the general repairs of the streets within and for two feet outside of and adjoining said company's tracks.

On the 25th of February, 1890, the Rochester City and Brighton Railroad Company duly executed and delivered to the defendant a lease of all its property, franchises, rights and privileges of every kind and description, for the unexpired term of its charter, pursuant to the provisions of the statutes of the State in such case made and provided. The defendant duly accepted said lease and thereupon entered into the possession of the demised railroad and property; thereafter, and in the year 1890, the defendant, being the lessee of the Rochester City and Brighton Railroad Company, duly acquired pursuant to the statutes of the State, the entire capital stock of the Rochester City and Brighton Railroad Company.

Thereafter, in the year 1890, the defendant applied to the Board of Railroad Commissioners of the State of New York for permission to change the motive power of the railroad so acquired by it, and of such extensions thereof as were contemplated and as were embraced in its articles of association and in said act of 1869, from horse power to electricity. Such proceedings were thereupon had that in said year the Board of Railroad Commissioners of the State of New York duly granted such permission to the defendant, and the property owners in the several streets in which such change was to be made duly gave their consent to such change. Immediately thereafter, beginning in the year 1890, the defendant, at great expense, proceeded to and did reconstruct the entire railroad which it had acquired from the Rochester City and Brighton Railroad Company, and equipped the same with electrical appliances. In making such change of motive power to electricity, as aforesaid, it became and was necessary for the defendant to, and the defendant did, reconstruct in its entirety the road so acquired by it as aforesaid, including the replacing of the ties, rails and foundation, with new material, and in replacing all of the cars with new motor power. Previous thereto the cars of said company running on said railroad were operated by horse power.

APP. DIV.—VOL. XCVIII.     34

The defendant in acquiring the capital stock of the Rochester City and Brighton Railroad Company and in the conversion of said railroad from a horse railroad to an electrical railroad, and in the reconstruction and re-equipment thereof, had, prior to the commencement of this action, expended upwards of four millions of dollars, and such expenditure was made by the defendant in reliance upon the provisions of said act of 1869, and in reliance upon said contract of February 25, 1890.

After the making of the said contract of February 25, 1890, and up to the time of the lease to the defendant, the said Rochester City and Brighton Railroad Company duly complied with and performed all the conditions of the said contracts by it agreed to be performed, and since the making of said lease the defendant has duly complied with and performed all the conditions and obligations of said contracts on its part to be performed, but it never prior to March 16, 1897, constructed or paid for any portion of a new pavement in any street or streets through which it maintained and operated its railroad. Since the passage of the act of 1869 and up to March 16, 1897, neither the Rochester City and Brighton Railroad Company nor the defendant has ever been assessed for or required to pay any portion of the expense of a new or permanent improvement of any portion of any street, avenue or highway in which the Rochester City and Brighton Railroad Company obtained its franchise or constructed its road prior to the 6th day of May, 1884. After the passage of chapter 252 of the Laws of 1884 the Rochester City and Brighton Railroad Company obtained from the municipal authorities of the city of Rochester various consents to extend its tracks and railroads into various streets of the city of Rochester, and the municipal authorities of the city of Rochester have from time to time granted such consents upon the condition provided for in chapter 252 of the Laws of 1884, as follows : " Upon the express condition that the provisions of chapter 252 of the Laws of 1884 pertinent thereto shall be complied with ; " and since the lease to the defendant of the property and franchises of the Rochester City and Brighton Railroad Company and the filing of the certificate of the acquisition of all of its capital stock, the defendant has applied to the municipal authorities of the city of Rochester for consent to extend its railroad into various streets in the city of

Rochester, named in its articles of association or in certificates of extension filed by it, and the municipal authorities have granted such right or franchise to make such extension since the passage of the General Railroad Act, known as the Railroad Law, and such consents have had annexed the condition required by the provisions of the Railroad Law, as follows: " That the foregoing consent is given upon the following conditions expressly, to wit: that the provisions of Article IV of the Railroad Law pertinent thereto shall be complied with." And both the Rochester City and Brighton Railroad Company and the defendant acted upon such consents and made and built the extensions into such various streets under such consents.

On the 11th of December, 1894, the defendant presented to the common council of the city a petition, stating that the location of the tracks of the Rochester City and Brighton Railroad Company and other railroad companies to the rights of which the defendant had succeeded and the tracks of the railroad of the defendant as laid, had not been fixed with due and proper formality, although resolutions from time to time granting the right had been passed by the common council, and the consents of property owners obtained, and that the defendant, having substantially completed its system of operating its cars with electric motive power, it seemed right and proper that a formal resolution of the common council should be passed ratifying and approving of the location of its tracks, poles, wires and appurtenances, as then at present located and constructed.

The defendant, therefore, made application for the consent of the authorities of the city to the location, construction, operation and maintenance of its railroads, in, through, along and upon the streets of the city where it had been constructed, setting forth a description of the location of the tracks, etc., in each of the streets in which the defendant had constructed its tracks, which description included the said two streets, North St. Paul street and Park avenue.

Thereupon the common council passed an ordinance embodied in certain resolutions containing the conditions upon which the city would grant the prayer of the petition, and directed the city attorney to prepare a contract in accordance therewith.

The contract was so made and executed by and on behalf of the city and the defendant on the 31st of December, 1894; it provided

that the defendant would, in each and every particular, comply with the conditions contained in the resolutions adopted by the common council; and on the part of the city that it thereby ratified and confirmed the location of the railroad and tracks of the defendant as set forth in the resolutions, in accordance with the conditions therein expressed.

The conditions imposed, including the consideration moving to the city, set forth in the resolutions, were as follows:

"*Resolved*, That the location of the railroad and tracks of said Rochester Railway Company as now operated and used by said company in the streets, avenues and highways hereinafter specifically described, is hereby ratified and approved, subject to such changes and alterations as the common council may from time to time direct, and subject to all the rights and privileges now possessed by the city under existing contracts or agreements or by law, nevertheless upon the following conditions:

"*First.* That the provisions of Article Four of the Railway Law of the State of New York, being an act in relation to railroads constituting Chapter 39 of the General Laws of the State of New York be complied with.

"*Second.* In order to increase the efficiency of the police system of said city, and that peace and good order may at all times be maintained in said city, and upon the cars of said company, and that the movement of the cars of said company be not interfered with by riotous or unlawful proceedings, that the said company, its successors and assigns furnish transportation without other consideration than the execution of an agreement on the part of said city, embodying the terms of these resolutions to not more than two policemen at a time upon each of the cars of said company, such transportation to be furnished only when said policemen are in full uniform and such transportation to continue as long as the Rochester Railway Company, its successors and assigns shall operate, maintain and use its railroad in said city.

"It is further provided that on the written request of the superintendent of police, the said railroad company shall issue to the active detectives of the police force, to the number of not more than nine, tickets for not more than one hundred rides for each detective on the cars of the company in any one month.

" *Third.* In order that opportunity may at all times be afforded to the members of the paid fire department of said city to reach quickly the locality of any conflagration, that said company shall furnish like transportation for the same consideration hereinbefore expressed to not more than two firemen at a time upon each of the cars of said company, such transportation to be furnished only while said firemen are in full uniform, and said transportation to continue as long as the Rochester Railway Company, its successors and assigns, shall operate, maintain and use its railroad in said city.

" *Fourth.* That all of the provisions of any agreement between the city of Rochester and any street railroad company, and all ordinances, resolutions, grants and consents heretofore passed by said city, with reference to the construction, maintenance or operation of street railroads within said city shall remain in full and binding force ; and these resolutions shall not be construed as extending or affecting the franchise of any such company, or the time of the expiration of any such franchise, or the moneys required to be paid to said city by such company, or as repealing, modifying or changing in any respect the terms or provisions of any agreement previously entered into between said city and any street railroad company.

" *Fifth.* That this ratification and confirmation of the location of the railroad and tracks of said company shall have the same effect as if said railroad and tracks had originally been laid with the proper consent and authority of said city, and no other effect or construction.

" *Sixth.* Said Rochester Railway Company, however, for the same consideration, agrees for itself, its successors and assigns, upon the written order of the mayor, superintendent or chief of police, or fire commissioner of said city, or officers performing their. duties, in cases of emergencies, to transport upon each of its cars any number of policemen or firemen."

Thereafter and beginning March 16, 1897, and thereafter from time to time up to and after the decision of the Court of Appeals in *Conway* v. *City of Rochester* (157 N. Y. 33), decided on the 18th day of October, 1898, the plaintiff claimed that the defendant was liable to pay for all paving when a street was improved with a new pavement between its tracks, the rails of its tracks and two feet outside, and the defendant claimed that it was not liable .to pay for such

paving in any street or streets where it or its predecessor, the Roches-
ter City and Brighton Railroad Company, had obtained a franchise
or constructed its railroad prior to the taking effect of the Railroad
Law, passed by the Legislature of the State of New York in the year
1890, and in the year 1899 the plaintiff commenced actions in the
Supreme Court of the State of New York against the defendant to
recover the expense of paving between the tracks, the rails of the
tracks and two feet outside in a large number of streets in which the
defendant was operating its street railway, in some of which the fran-
chise had been obtained and the railroad constructed by the Roches-
ter City and Brighton Railroad Company prior to the 6th day of May,
1884, and in some cases where the franchise had been obtained and
the railroad constructed between the 6th day of May, 1884, and the
1st day of May, 1891, and in some of which the franchise had been
obtained and the road constructed after the 1st day of May, 1891.
The defendant interposed defenses to such actions and the same
were at the time of the making of the contract hereinafter referred
to, pending undetermined.   Thereafter and in the year 1899 and
the year 1901 the Legislature of the State of New York passed a
large number of special acts authorizing the municipal authorities of
the city of Rochester to assess upon the property of the defendant
in the same manner that assessments were made upon the property
of other persons for public improvements, the expense of paving
between the tracks, the rails of the tracks and two feet outside in
different streets which had been paved by the city of Rochester
after the month of October, 1893, in which streets the defendant
owned and operated its street surface railroad and in some of which
streets the Rochester City and Brighton Railroad Company had
obtained its franchise and constructed its road prior to the 6th day
of May, 1884.   Under and pursuant to such special acts assess-
ments were made against the property of the defendant in each of
said streets for the expense of paving the space aforesaid in the
street in which such pavement was made, and the defendant com-
menced an action against the plaintiff in the Circuit Court of the
United States for the then northern district of New York for the
purpose of vacating and setting aside all of such assessments upon
the ground that the acts of the Legislature of the State of New
York under which such assessments were made were and each of

them was void and in contravention of the provisions of the Constitution of the State of New York and of the Constitution of the United States. While all of such actions were pending undetermined the Legislature of the State of New York on the 26th day of April, 1901, passed chapter 562 of the laws of that year entitled " An Act to authorize and empower the city of Rochester to enter into a contract with the Rochester Railway Company, adjusting and settling all differences between the city and said railway company as to the amount due and owing from the company to the city for certain pavements heretofore made by the city pursuant to section ninety-eight of the Railroad Law, and providing for the payment of the same." Such act authorized the plaintiff and the defendant to enter into a contract for the settlement of all such claims.

Thereafter and on the 27th day of April, 1901, plaintiff and the defendant entered into an agreement dated that day, duly executed and acknowledged by the plaintiff, by George A. Carnahan, its mayor, and executed and acknowledged by the defendant by its president and attested by its secretary under the corporate seal, and approved by the corporation counsel of the plaintiff, which contract recited the matters in difference between the city and the defendant, and in settlement thereof provided that the defendant should pay to the city in full satisfaction and discharge of its claims for paving the sum of $386,632.46, and the defendant agreed to waive any claim for exemption from paying for pavements thereafter laid in streets in which it or the Rochester City and Brighton Railroad Company obtained a franchise and constructed tracks after May 7, 1884, but that " as to all claims which may hereafter be made by the city against the railway company for all pavements hereafter made in streets or parts of streets in the said city in which the Rochester City & Brighton Railroad Company obtained its franchise or constructed a railroad prior to the 7th day of May, 1884, the question of the liability of the railway company to pay for making pavements in such streets or parts of streets between its tracks, the rails of its tracks and two feet outside, or any part thereof, shall be litigated and determined in a court having jurisdiction, such questions to be raised as speedily as possible in such manner as may be agreed upon by the corporation counsel of the city and the counsel of the railway company, and such questions to be finally judicially deter-

mined in the courts. · It being expressly agreed and understood between the parties hereto that the question of the liability of the railway company to pay for paving hereafter made in any such streets or parts of streets in which the Rochester City & Brighton Railroad Company obtained its franchise or constructed a railroad prior to the 7th day of May, 1884, is not conceded by the railroad company or waived by the city, but shall be judicially determined as aforesaid."

The Court of Appeals in the *Conway* case did not have before it the several ordinances and agreements constituting the various contracts made by and between the city of Rochester and the Rochester City and Brighton Railroad Company and the Rochester Railway Company. The contention on behalf of the city there was that the provisions of section 98 of the Railroad Law of 1890, amended in 1892, only required repairs to be made by railroad companies, and did not include the construction of new pavements, and if new pavements were included the Rochester Railway Company was exempted by a special statute from making or contributing toward the expense thereof. Although reference was made to the act of 1869 for the relief of the Rochester City and Brighton Railroad Company in the brief of counsel for the city, no allusion or reference is made to that act in the opinion.

It seems to be well-settled law that the ordinance or resolutions of the common council of a city consenting to the use of its streets by a railroad corporation, when accepted by the corporation, constitute a contract.

In the case of *Brooklyn Central Railroad Company* v. *Brooklyn City Railroad Company* (32 Barb. 358) it is said, speaking of the resolutions of the common council of the city of Brooklyn granting its assent to the construction of a railroad, "The resolution * * * constituted a contract which the company was bound to perform, and which the common council could not rescind without adequate cause." (P. 364.) Again on page 366 of the same case reference is made to the observations upon the same question by Chancellor KENT as follows: "Speaking of franchises Chancellor KENT, in his Commentaries, says (vol. 3, p. 458), ' they contain an implied covenant on the part of the government not to invade the rights vested, and on the part of the grantees to execute the duties

and conditions prescribed in the grant. The government cannot resume them at pleasure or do any act to impair the grant without a breach of the contract.' "

In *Milhau* v. *Sharp* (27 N. Y. 620) the court, in considering a resolution of the common council of the city of New York granting authority to construct and operate a railroad, says: " It was not, as has been insisted, an act of legislation, but on the contrary possesses all the characteristics of and was in fact a contract. It was held to be a contract in the case of *The People* v. *Sturtevant* (9 N. Y. 273), and but a slight examination of its provisions is requisite to show the correctness of that decision. Prior to its acceptance by the defendants the resolution was only a proposition having no binding force whatever. It was certainly not then a law, and since that time the common council have taken no action upon it. Upon its acceptance (if valid) it became a contract between two parties, binding each to the observance of all its provisions. * * * The defendants' counsel insists that the resolution is not a contract, but a license, revocable at the pleasure of the common council. This position cannot be reconciled with the decision, in *The People* v. *Sturtevant* (*supra*) nor with the principle declared by the Supreme Court of the United States, in the *Dartmouth College Case* * (4 Wheat. 519), and other kindred cases in substance, that grants of such franchises, though made by acts in form legislative, become, when accepted and acted upon, contracts, not subject to be recalled or modified, except in accordance with express reservations contained in the grants."

In *Skaneateles Water Works Co.* v. *Village of Skaneateles* (161 N. Y. 154) the court had under consideration the effect of certain statutes affecting the rights of the parties. The opinion (at p. 166) states: " We are thus brought to an examination of the statutes, and our first inquiry will be whether they merely threaten parties in the plaintiff's situation with the consequences of local municipal competition or constitute an invasion of their grants. The former, as we have seen, is permissible. But the latter may not be done, for the doctrine has been settled since the *Dartmouth College Case* * (4 Wheat. 518), that a grant of corporate powers by the sovereign

---

* *Dartmouth College* v. *Woodward.*— [REP.

to an association of individuals for public use constitutes a contract within the meaning of the Federal Constitution prohibiting a State Legislature from passing laws impairing its obligations. In the recent case of *Pearsall* v. *Great Northern Ry. Co.* (161 U. S. 646) the court, after a brief review of the *Dartmouth College* case, said : ' Subsequent cases have settled the law that wherever charter rights have been acquired by virtue of the corporate charter, such rights, so far as they are necessary to the full and complete enjoyment of the main object of the grant, are contracts, and beyond the reach of destructive legislation.' Intermediate the cases cited there are many cases in the Supreme Court of the United States in which the doctrine referred to has been either asserted or made the basis for the decision, as in *N. O. Gas Co.* v. *Louisiana Light Co.* (115 U. S. 650) ; *N. O. Water Works Co.* v. *Rivers* (115 U. S. 674) ; *Louisville Gas Co.* v. *Citizens' Gas Co.* (115 U. S. 683). These were cases where the grants were of an exclusive right to supply gas or water to a municipality. That court has taken frequent occasion to assert the inviolability of corporate charters in cases respecting the power of taxation, and in a series of decisions extending over many years has held that a clause in the contract imposing certain taxes in lieu of other taxes, or all taxes to which the stockholders would be subject, is impaired by legislation raising the rate of taxation or imposing taxes other than those specified in the charter."

Therefore, it must be held here that, by the ordinance of January 12, 1869, relieving the Rochester City and Brighton Railroad Company from making any new pavement, approved by the act of the Legislature (Laws of 1869, chap. 34), specifically providing that said railroad company should keep the surface of the streets inside the rails of its tracks in repair, but that whenever any of said streets were permanently improved, said company should not be required to make any part or portion of such improvement, under which ordinance and enactment the railroad company continued to maintain and operate its street surface railroad, and extend its railroad into other streets and parts of streets in the city, a contract was made and entered into by and between the city and the railroad company from the provisions of which neither without the consent of the other was at liberty to depart, so that from the time of the passage of the

amended ordinance in 1869 to the time of the enactment of the law of 1884 (Laws of 1884, chap. 252), providing for the construction, extension, maintenance and operation of street surface railroads, the Rochester City and Brighton Railroad Company was required to keep and maintain the surface of the streets inside the rails of its tracks in good and thorough repair, but was not required to make or bear the expense of any part or portion of any permanent improvement of the streets in which its tracks had been laid or any extensions thereof made, prior to May 6, 1884, the date of the passage of chapter 252 of the laws of that year.

The brief of counsel for the city states that the action is brought under chapter 252 of the Laws of 1884, which directs that the street railway companies shall, in case of repaving or repairing pavements in the streets of cities, provide at their own expense such repaving or repairs, and in case of neglect the local authorities may themselves perform the work and call upon the railway companies for payment therefor.

That act provides, as stated in the title, for the construction and extension of street surface railroads, and its provisions regulate the manner and the terms and conditions upon which corporations may be formed for the purpose of constructing, maintaining and operating street surface railroads, and for the construction by any existing street surface railroad company of extensions of its lines or branches thereof. The act then provides:

" § 9. Every such corporation incorporated under, or constructing, extending or operating a railroad constructed or extended under the provisions of this act, within the incorporated cities and villages of this State, shall also, whenever and as required and under the supervision of the proper local authorities, have and keep in permanent repair the portion of every street and avenue between its tracks, the rails of its tracks and a space two feet in width outside and adjoining the outside rails of its track or tracks so long as it shall continue to use such tracks so constructed under the provisions of this act."

This provision applies, as it clearly appears from the context of the section, and also from the various provisions of the other sections of the act, to the tracks of street surface railroad companies incorporated under its provisions and to the tracks only of an exten-

sion of the line or branches of the railroad of an existing street surface railroad company. That the act was not intended to regulate the operation of the railroad of an existing street surface railroad company is expressly shown in the section providing for the regulation of fares, as follows :

" § 13. No company or corporation incorporated under, or constructing and operating a railroad under the provisions of this act, shall charge any passenger more than five cents for one continuous ride from any point on its road or on any road or line or branch operated by it or under its control, to any other point thereon or on any connecting branch thereof within the limits of any incorporated city or village. This section shall not be construed to apply to any part of any road heretofore constructed and now in operation, unless such company shall acquire the right to extend such road, or to construct branches thereof under the provisions of this act, in which event its rate of fare shall not exceed its authorized rates prior to such extension."

If, however, the provisions of the act can be regarded as broad enough to apply the provisions of section 9 to the entire railroad of any existing street surface railroad company extending its lines under the provisions of the act, then such provisions are unconstitutional, as being violative of the existing contract between the city and the Rochester City and Brighton Railroad Company, to all the rights of which company the defendant has succeeded. (*Gilmore* v. *City of Utica*, 121 N. Y. 561.)

It is further urged in behalf of the plaintiff that the defendant has expressly assented to the right of the city to exact the payment now in suit, and effectually waived any claim that it might have for exemption by assenting to the terms and conditions upon which the common council definitely fixed and confirmed the right of the defendant to the location of its tracks as the same stood in December, 1894, upon condition that article 4 of the Railroad Law (which is the codification of the statute of 1884) be fully complied with by the defendant.

It may be said that such assent of the city to the location of the defendant's tracks as the same had been laid under approval and consents obtained from time to time was a mere formality; no new or additional franchise being granted by such ratification and

approval, the conditions imposed were violative of the previously existing contracts.

But the resolution of the common council that the provisions of article 4 of the Railway Law should be complied with, assented to by the defendant, is modified and the rights of the parties specifically stated and determined by the subsequent provision that all of the provisions of any agreement between the city of Rochester and any street railroad company, and all ordinances, resolutions, grants and consents heretofore passed by said city with reference to the construction, maintenance or operation of street railroads within said city, shall remain in full and binding force ; and these resolutions shall not be construed as repealing, modifying or changing in any respect the terms or provisions of any agreement previously entered into between said city and any street railroad company.   Moreover, further exactions were made by the city in requiring the defendant, as long as it or its successors and assigns should operate, maintain and use its railroad in said city, to furnish free transportation on its cars to the police and firemen of the city, for which there was no equivalent except the resolution of the common council ratifying and approving the location of the railroad and tracks of the defendant as the same were then operated and used.

It is argued in behalf of the city that the special acts of the Legislature authorizing the municipal authorities of the city to assess upon the property of the railway company, in the same manner that assessments are made upon the property of other owners benefited by the improvement of the streets, the expense of paving between and outside the railroad tracks, is not violative of the rights of the defendant as impairing the obligation of its contract with the city. (Citing *Lake St. El. R. R. Co.* v. *City of Chicago,* 183 Ill. 75 ; *Lincoln Street R. Co.* v. *City of Lincoln,* 61 Neb. 109 ; 84 N. W. Rep. 802 ; *Storrie* v. *Houston City St. Ry. Co.,* 92 Tex. 129 ; 44 L. R. A. 716 ; *New York, Lake Erie & W. R. R. Co.* v. *City of Dunkirk,* 65 Hun, 494 ; affd., 143 N. Y. 659.)

In *Lake St. El. R. R. Co.* v. *City of Chicago* (*supra*) there was simply an ordinance granting authority to an elevated railroad company to maintain and operate its road, requiring it to restore and put in good condition pavements, etc., in case they were disturbed in constructing the road.   It was held that the ordinance was not a

contract which precluded a subsequent assessment of the company's property for the local improvement of the street, the same as any real estate contiguous to the improvement.

In *Lincoln Street R. Co.* v. *City of Lincoln* (*supra*), chiefly relied upon in support of this contention, the ordinance submitting to the electors the proposition of giving their consent to the construction and operation of a railway, provided as follows : " Said railway track shall be so constructed and maintained as to present the least practical obstruction to the ordinary and public use of the streets, and that it shall, when required, conform to the established grade of the streets as now or hereafter to be established, when such streets are brought to grade. And further, said railway company shall be subject to all reasonable regulations in construction and use of said railway which may be imposed by ordinance." Held, assuming that such provisions became a part of the charter of the corporation, having the elements of a contract with respect thereto, that an exemption from assessments for the improvement of the streets was not created, and that the Legislature was not thereby prohibited from imposing a liability on such corporation to pave part of the streets occupied by its tracks in conformity with the improvement of the remainder of the streets. Held, further, that a charter or grant of franchise rights to a corporation is to be construed strictly, and a claim of exemption cannot be sustained which is not in express terms granted or clearly implied from the terms of the grant.

In *Storrie* v. *Houston City St. Ry. Co.* (*supra*) it was held that an enlargement of the liability of a street railway company for paving a street is *not unconstitutional where* the company's rights were acquired subject to the constitutional provision that all privileges and franchises shall be subject to legislative control.

In *New York, Lake Erie & W. R. R. Co.* v. *City of Dunkirk* (*supra*) it was held merely that the Legislature had absolute authority over the subject of taxation, and that as the railroad corporation was a creature of the statute, the Legislature might impose upon it burdens additional to those prescribed by its charter.

These cases in effect merely uphold the power of the Legislature to declare that the property of a street surface railway company is of a character to be substantially and directly benefited by the

improvement of a street, and that in proportion as it is benefited may be assessed in common with other property upon the street.

In *Covington* v. *Kentucky* (173 U. S. 231), cited in support of the plaintiff's contention, it was held that the provision in the act of the Legislature of Kentucky of May 1, 1886, that certain reservoirs, etc., with the land on which they were situated, which the city of Covington was, by that act, authorized to acquire and construct, should be and remain forever exempt from State, county and city tax, did not, in view of the provision of the prior act of February 14, 1856, that "all charters and grants of or to corporations, or amendments thereof, and all other statutes, shall be subject to amendment or repeal at the will of the Legislature, unless a contrary intent shall be therein plainly expressed," tie the hands of the Commonwealth of Kentucky, so that it could not, by legislation, withdraw such exemption and subject the property to taxation. The pith of the decision, so far as it is applicable here, is found in a single paragraph of the opinion of the court, in which it is said : " If that act (the act exempting the property from taxation) in any sense constituted a contract between the city and the Commonwealth, the reservation in an existing general statute of the right to amend or repeal it was itself a part of that contract."

It will be observed that here, in the statute of 1869, legalizing the amended ordinance of the common council, it is expressly provided without any reservation of a right to amend or repeal, that whenever any of the streets of the city should by ordinance or otherwise be permanently improved, the railroad company shall not be required to make any part or portion of such improvement, or bear any part of the expense thereof. The legislative provision is in terms the same as that of the amended ordinance which was the basis of the contract with the Rochester City and Brighton Railroad Company, all of the provisions of which were expressly ratified and confirmed upon further consideration moving from the defendant to the city, by the resolutions of the common council embodied in the contract made by the city with the defendant in 1894.

The provision for the exemption of the Rochester Railway Company from assessment upon its property of any part of the expense of the permanent improvement of any street or parts of streets of the city, on which the tracks of the company or its predecessors

were laid prior to the general act of 1884, is as absolute as that in any of the authorities cited in the opinion of the Court of Appeals in the case of *Skaneateles Water Works Co.* v. *Village of Skaneateles* (161 N. Y. 167) in support of the inviolability of corporate charters respecting the power of taxation.

In the case of *State of New Jersey* v. *Wilson* (7 Cranch, 164) it was held that " a legislative act declaring that certain lands which should be purchased for the Indians should not thereafter be subject to any tax, constituted a contract which could not be rescinded by a subsequent legislative act, such repealing act being void, under that clause of the Constitution of the United States which prohibits a State from passing any law impairing the obligation of contracts."

· In *State Bank of Ohio* v. *Knoop* (16 How. [U. S.] 369) the doctrine was applied to the provision of a general banking law, under which the plaintiff bank received its charter, requiring banks to make semi-annual dividends and set off six per cent of such dividends for the use of the State, which sum or amount so set off should be in lieu of all taxes to which the company or the stockholders therein would otherwise be subject.   This, it was held, was a legislative contract fixing the amount of taxation which could not be changed without the consent of the bank.   In the course of the opinion it was said that " every valuable privilege given by the charter and which conduced to an acceptance of it,   *   *   *   is a contract which cannot be changed by the Legislature, where the power to do so is not reserved in the charter."

The State having adopted a new Constitution, in the case of *Dodge* v. *Woolsey* (18 How. [U. S.] 331) it was held that the fact that the State Constitution had been changed since the passage of the act chartering the bank, could not release the State from the contract contained in the charter.

In *McGee* v. *Mathis* (4 Wall. 143) it was held that where a State, in order to promote the sale and reclamation of its swamp lands, provides by legislation that such lands shall be exempt from taxation for the term of ten years and issues transferable scrip receivable therefor, the contract arising between the State and a receiver of the scrip is impaired by a subsequent act of the Legislature repealing the exemption, although the land is not taken up and the scrip paid until after the passage of such act.

In the case of *Binninger* v. *City of New York* (177 N. Y. 199), to which attention is called, the question here under consideration was not before the court or under discussion. The resolution of the common council of the city of Brooklyn passed in the year 1853, authorizing the Brooklyn City Railroad Company to construct and operate a street surface railroad, was without legislative sanction. It was before the General Railroad Law empowering cities and villages to grant franchises to street surface railroad companies to construct and operate street railways, and, therefore, the resolution granting the franchise was beyond the power of the common council and void. (*Potter* v. *Collis*, 156 N. Y. 16.)

In the case of *Village of Mechanicville* v. *S. & M. Street R. Co.* (35 Misc. Rep. 513; affd., without opinion 174 N. Y. 507) it was held that the franchise or contract given to the street railway corporation, as construed by the court, permitted a pavement of the kind adopted by the village. Having held it to be fairly presumed that neither of the parties expected or intended that the kind of pavement mentioned and originally provided for in their contract, in the changed circumstances which had arisen should be laid, it was unnecessary for the court to go further in giving reasons for its decision.

In the *Binninger* case and in the *Mechanicville* case, *Milhau* v. *Sharp* (27 N. Y. 611), in which it was held that the powers of a municipal corporation in respect to the control and regulation of the streets, are held in trust for the public benefit, and without legislative sanction cannot be abrogated or delegated to private parties, was cited and applied.

Here the authority to grant the franchise given to the railway company has not only legislative sanction by special enactment, but the terms of the grant are by contract in writing, made and executed by the parties, expressly stipulated, and afterward, upon a new and valuable consideration, ratified and confirmed by resolution of the common council, formally affirmed by the terms of the contract entered into in accordance therewith.

The case here seems to furnish the strongest possible grounds for the application of the constitutional provision prohibiting the Legislature from passing laws impairing the obligation of contracts

(U. S. Const. art. 1, § 10, subd. 1), and, therefore, it must be held that the Rochester Railway Company cannot be made liable by assessment or otherwise for paving between the tracks, the rails of the tracks and two feet outside of the tracks, in the streets of the city in which the Rochester City and Brighton Railroad Company had obtained its franchise and constructed its road prior to the 6th day of May, 1884.

The complaint should be dismissed.