Brooklyn, Queens County and Suburban Railroad Company, Appellant, *v.* The City of New York, Respondent.

Railroads — transfer by railway corporation of toll road owned by it to county in consideration, among other things, of future exemptions from expense of paving street — exemption held illegal — action, alleging failure of consideration for transfer, to recover damages — in absence of proof of value of rights conveyed and consideration given, plaintiff cannot recover.

Plaintiff as successor of other corporations owned the land in Jamaica avenue, running from Jamaica in the county of Queens to the city of Brooklyn in the county of Kings, with the right to construct and maintain a plank road thereon and charge tolls for the use thereof and with the further right to construct, maintain and operate a double-track surface railroad. Thereafter the county of Queens, pursuant to an act of the legislature, took over the plank

road of the plaintiff and turned it into a county road under an agreement with the plaintiff, also made in accordance with the authority conferred by said law, providing, among other things, as consideration for such transfer that the railroad company should not be liable for the expense of paving or repairing any portion of its said road between the tracks or elsewhere. Thereafter the county of Queens became part of the city of New York and, in an action by that city to recover money expended in repaving Jamaica avenue, under section 98 of the former Railroad Law, requiring street surface railroad corporations in cities to keep in repair the pavement between and two feet outside of its tracks, it was determined that the portion of the above agreement exempting the plaintiff from the expense of paving was illegal and that the county of Queens had no authority to relieve the plaintiff from a liability expressly placed upon it by statute. This action was thereupon commenced by the railroad company to enjoin the city of New York from collecting the judgment above referred to, alleging that there had been a failure of consideration for its deed and transfer to the county of Queens and asking that the plaintiff be awarded the damages which it had suffered by reason of such failure. Upon examination of the record, *held*, that the value of the rights conveyed by the plaintiff has not been ascertained, there being no evidence furnishing that value, and that until the full value of the consideration given to the railroad company has been ascertained and the value of its toll franchise relinquished to the company has been fixed, it is impossible to afford the plaintiff the relief demanded, assuming it to be entitled thereto.

*Brooklyn, Q. C. & S. R. R. Co.* v. *City of New York*, 182 App. Div. 32, affirmed.

(Argued March 11, 1920; decided July 7, 1920.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered April 19, 1918, reversing a judgment in favor of plaintiff entered upon the report of a referee and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles A. Collin, Charles L. Woody* and *George D. Yeomans* for appellant. Whatever the difference of view there may be as to the effect of *ultra vires* on corporate

contracts, in no jurisdiction can a party retain what it has received under such a contract and refuse to perform the contract. (*Appleton* v. *C. C. Nat. Bank,* 190 N. Y. 417; *C. C. Nat. Bank* v. *Appleton,* 216 U. S. 196; *Washington Life Ins. Co.* v. *Clasen,* 162 N. Y. 305; *Bath Gas Light Co.* v. *Claffy,* 151 N. Y. 24; *Woodruff* v. *Erie R. R. Co.,* 93 N. Y. 609; *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62.) If the city obtains money of another by mistake or without authority of law, it is its duty to refund it, not from any contract entered into by it on the subject, but from the general obligation to do justice which binds all persons whether natural or artificial. If the city obtains other property which does not belong to it it is its duty to restore it, or if used by it, to render an equivalent to the true owner. (*Argenti* v. *San Francisco,* 16 Cal. 255; *Marshall* v. *Fulton,* 10 Wall. 676; *Nelson* v. *Mayer,* 63 N. Y. 535; *Town of Hartley* v. *Floete Lumber Co.,* 171 N. W. Rep. 183; *Vermeule* v. *City of Corning,* 186 App. Div. 206; 166 N. Y. Supp. 546; *N. Y. C. & H. R. R. R. Co.* v. *City of Buffalo,* 85 Misc. Rep. 78; *Mixer* v. *Adam,* 66 Misc. Rep. 238; *Kramrath* v. *City of Albany,* 127 N. Y. 575; *Smith* v. *City of Utica,* 6 N. Y. Supp. 792; *Poillon* v. *Mayor,* 101 N. Y. 132; *Moore* v. *Mayor,* 73 N. Y. 238.)

*William P. Burr, Corporation Counsel (John F. O'Brier* and *Josiah A. Stover* of counsel), for respondent. An equitable adjustment could be reached by weighing the value of appellant's rights which it surrendered with the seven unassailed considerations which it received. The market value of appellant's interest in the plank road, based upon its earning power as a toll road, should have been balanced against the value of the rights and privileges which it obtained. (*Central N. Y. Tel. & Tel. Co.* v. *Averill,* 199 N. Y. 128; *People ex rel. Manhattan Ry. Co.* v. *Woodbury,* 203 N. Y. 231; *People ex rel. Hud. & Man. R. R. Co.* v. *Tax Comm.,* 203 N. Y. 119.)

CRANE, J.  Chapter 596 of the Laws of 1897 authorizes the acquisition of turnpikes and plank roads by counties adjoining cities of more than 800,000 and less than 1,500,000 inhabitants.  The act provides that the board of supervisors of such county may acquire by purchase or condemnation such turnpike or plank road for the purpose of laying out, maintaining, improving and repairing the road as a public highway and as a county road, subject to the retention of the fee thereof by the turnpike, plank road or street surface railroad corporation owning the same and subject also to the existing rights, franchises and privileges of such road.  The board of supervisors are given the further power in the name and in behalf of such county to make further agreements as to the terms and conditions upon which such street surface railroad company shall thereafter be operated and the acquisition by condemnation of the plank road shall be subject to the agreements if any so made.

The Brooklyn, Queens County and Suburban Railroad Company is a street surface railroad corporation, incorporated under the laws of the state of New York and as successor to the Brooklyn, Jamaica, Flatbush Turnpike Company incorporated on March 17th, 1809, and other like corporations, owned the land in Jamaica avenue, a highway running from Jamaica in the county of Queens to the city of Brooklyn in the county of Kings, with the right to construct and forever maintain a plank road thereon and thereover and charge tolls for the use thereof and with the further right to construct, maintain and operate a double-track surface railroad.

Ever since its incorporation the plaintiff has operated a street railroad over the part of Jamaica avenue here in question, a distance of about six miles, and up to the time of the agreement and deed hereinafter mentioned collected tolls for the use of the highway.  The average income received in tolls by the company from the operation of the turnpike franchise in Jamaica avenue for the years

1893, 1894, 1895, 1896 and 1897 to August 31st, after deducting the salaries of the toll collectors and without taking into consideration the cost of keeping the road in repair, was annually $3,554.87.

In 1897 the county of Queens, pursuant to the above act of the legislature, took over the plank road of the plaintiff and turned it into a county road. It was regraded, repaved and improved at county expense. To acquire the road the county on the 16th day of August, 1897, entered into an agreement with the plaintiff railroad company and later received a deed from the railroad company pursuant to said agreement. The county also commenced and completed condemnation proceedings and acquired the rights of the railroad company which by the report of the commissioners were valued at one dollar. As the condemnation proceedings were taken after the agreement with the railroad company it is quite evident that they were for the purpose of clearing up any outstanding rights such as the holdings of mortgagees which could not be transferred by the agreement or deed of the railroad company.

The deed dated August 16th, 1898, conveyed to the county of Queens all that portion of the turnpike or plank road formerly known as the Brooklyn and Jamaica plank road commencing at its terminus near the junction of Fulton street with Grand street in the village of Jamaica in the county of Queens and extending thence westerly through the village of Jamaica and known in said village as Fulton street and thence continuing westerly through the town of Jamaica in said county of Queens to the the boundary line between said county of Queens and the city of Brooklyn, for the purpose of laying out, maintaining and improving such portion of said turnpike or plank road as a public highway and as a county road subject to the retention of the fee thereof by the railroad company and subject to the existing rights of the company to construct and operate a street surface railroad and

subject also to the agreement made between the board of supervisors of the county of Queens and the railroad company bearing date August 16th, 1897.

This agreement is made a part of the deed and recites the incorporation of the plaintiff and its predecessors and their rights to maintain a turnpike and plank road. Reference is then made to chapter 596 of the Laws of 1897, and to the fact that the board of supervisors has commenced proceedings to acquire by condemnation the turnpike and plank road pursuant to the authority of said law. Then follows the agreement also made in accordance with the authority conferred by said law which is to the following effect: the railroad shall at all times be constructed and operated for a street surface railroad; all expense caused to the railroad by reason of a change of grade in the highway shall be paid by the county; the railroad may from time to time construct switches; no car license shall be required or imposed upon the railroad; the company shall be entitled to charge the rates of fare then in force and shall not be obliged to transfer passengers without additional fare; the railroad company shall not be liable for the expense of paving or repairing any portion of its said road between the tracks or elsewhere; no fee shall be charged for any permit to open the street; the railroad shall be cleared from all unpaid taxes and assessments levied upon it prior to 1897.

The effect of the above deed, agreement and condemnation proceeding was to turn the Jamaica turnpike plank road into a county highway and to abolish the toll system; the railroad relinquished its rights in the highway except for the maintainance of its railroad as a street surface railroad with the privileges and immunities stated in the agreement.

The transfer to the county was made subject to the fee of the railroad company in the roadway. Whether or not the railroad company owns the fee must of necessity be immaterial to the questions here raised.

On January 1st, 1898, the county of Queens became part of the city of New York. Thereafter the city commenced proceedings against the railroad company to recover its proportion of the money expended in repairing and repaving the portion of Jamaica avenue here in question. Under the provisions of section 98 of the former Railroad Law every street surface railroad corporation so long as it shall continue to use any of its tracks in any street of a city or village shall keep in repair that portion of the street between the rails of its tracks and two feet in width outside thereof.

The Brooklyn, Queens County and Suburban Railroad Company had failed to comply with this law, claiming exemption because of the agreement above mentioned, and it pleaded such agreement in defense to the action brought by the city to recover the cost of the repairs. It was decided, however, in that action that this portion of the agreement was illegal and that the county of Queens had no authority to relieve the railroad company from a liability expressly placed upon it by a statute of the state. (*City of New York* v. *Brooklyn, Queens County & Suburban Railroad Co.*, 156 App. Div. 856; affd., 213 N. Y. 634.)

The judgment recovered in that action against the railroad company amounted to $68,739.82. The opinion of the Appellate Division in that case said: " It may be if the defendant is subject to the provisions of section 98 of the Railroad Law and compelled to repave the street as therein provided that the consideration of the agreement for the conveyance, at least to that extent, fails; but if so, the defendant has its remedy, but not in this action." (p. 860.)

This action was thereupon commenced by the railroad company to enjoin the city of New York from collecting the judgment above referred to, alleging that there had been a failure of consideration for its deed and transfer to the county of Queens and asking that the plaintiff be

awarded the damages which it had suffered by reason of such failure.

The Special Term found upon the report of a referee that the main consideration for the deed of the railroad company to the county of Queens was the exemption from its duty to repair the road between its tracks; that the value of this exemption to the railroad company was $237,147.60, and gave judgment to the plaintiff for that amount. The Appellate Division in reversing and granting a new trial called attention to the fact that if the railroad company could not be exempted from the provisions of the Railroad Law requiring it to pave its streets that to give to it a sufficient sum or capital the interest on which would cover the cost of repair was in effect a nullification of the statute and of our decision in the previous case.

The value of the rights conveyed by the plaintiff in this action to the county of Queens have not been ascertained. What was transferred apparently was the right to maintain a plank road and collect tolls. The net receipts from the tolls were found as a fact in this case, but the value to the railroad company of any or all the rights surrendered by it was not proved. The referee and the Special Term attempted to find the value of these rights by assuming that it was equal to the value of the exemption given to the railroad company. The fallacy of this reasoning readily appears when by reference to the agreement it is noted that there were six or seven other considerations or privileges granted the railroad besides this exemption. The right to maintain fares without free transfers, to have permits without fees and the other items above mentioned must have had some value so that if the method suggested by the Special Term is to be adopted the total rights relinquished by the railroad company would be equal to the sum total of the values of all these privileges and rights given by the county to the railroad company. If, for example, the paving exemption

were worth $237,147.60, and the other privileges given to the railroad company were equally valuable and the toll rights given to the county were equal in value to the paving exemption, namely, $237,147.60, the railroad company by losing the exemption from paving would still be $237,147.60 ahead and suffer no damage.

I use this illustration for the purpose of showing that until the full value of the consideration given to the railroad company has been ascertained and the value of its toll franchise relinquished to the county has also been fixed, it is impossible to afford the plaintiff the relief demanded, assuming it to be entitled thereto.

It may be (although we do not so decide) that under such an agreement as was here made between the railroad and the county of Queens upon failure of consideration the county should return what it has received or make compensation therefor. (*Appleton* v. *Citizens' Central Nat. Bank of N. Y.*, 190 N. Y. 417; affd., 216 U. S. 196; *Vermeule* v. *City of Corning*, 186 App. Div. 206; *Kramrath* v. *City of Albany*, 127 N. Y. 575; *Poillon* v. *City of Brooklyn*, 101 N. Y. 132.)

To afford this relief, however, the value of that which the county has received must be determined. No evidence in this case furnishes that value.

The Appellate Division reversed the findings that the fee of Jamaica avenue was in the plaintiff and that the exemption from repairs was the paramount or main consideration for the agreement, also that the railroad company had the right to tolls from said road and that the county of Queens had no jurisdiction over it. It also reversed all the conclusions of law and granted a new trial.

The appellant claims, however, that as the findings of fact regarding the grants from the Dutch and English governments and the various deeds to the plaintiff's predecessors and the agreement and deed from the plaintiff to the county of Queens are all left as part of the

findings of fact, these as a matter of law lead to the conclusion that the plaintiff should recover the amount of money specified as the Appellate Division made a new finding of fact as follows: " The reasonable value to plaintiff of the future exemption from paving the avenue on which its tracks ran and which the officials of Queens county attempted to make part of the consideration stated in the contract of August 16th, 1897, as of that date, was $237,147.60 which would be the capital sum required to produce an income sufficient permanently to keep in repair and renew such pavement between its tracks and two feet in width outside thereof as required by the Railroad Law, section 178."

Conceding by way of argument that the findings unreversed would lead to a judgment in the plaintiff's favor; that its toll franchise was of value and if received by the county of Queens would upon failure of consideration be returned or paid for, yet, for the reasons above stated, the value of the toll franchise has not been proved in this case and this finding of the Appellate Division is not the value or evidence of the value of the rights given by the railroad company to the county of Queens.

This reasoning of necessity leads to an affirmance of the judgment appealed from and because of the stipulation given, judgment absolute must be rendered against the plaintiff.

Chase, Cardozo and Pound, JJ., concur; Hiscock, Ch. J., and Andrews, J., concur in result; Collin, J., not sitting.

Judgment affirmed, etc.