THE CITY OF NEW YORK, Respondent, v. NATIONAL SURETY COMPANY, Appellant.

*Principal and surety — defendant gave bond to secure payment of judgment in favor of plaintiff — in another action between parties to judgment, another surety company gave bond to secure payment of same judgment — second bond was canceled by order of court and plaintiff did not notify defendant of second surety's proceedings for such cancellation or appeal from cancellation order — defendant not released.*

Appeal from an order of the Supreme Court, made at the New York Special Term and entered in the New York county clerk's office on August 24, 1922, granting plaintiff's motion to strike out a defense in an action to recover $70,913.95, with interest, on an undertaking executed by the defendant.

Order affirmed, with ten dollars costs and disbursements. No opinion. Present — Clarke, P. J., Dowling, Smith, Merrell and McAvoy, JJ.; Smith and McAvoy, JJ., dissenting.

McAVOY, J. (dissenting): Notwithstanding the hardship upon the city which once was assured by two bondsmen and now is left with none, I believe the well-founded surety law requires that this order should be reversed and, therefore, I dissent. The city sued the Brooklyn, Queens County and Suburban Railroad Company for the cost of repaving Jamaica avenue and recovered a judgment of $70,913.95 in November, 1912. The defendant railroad company appealed from the judgment and gave an undertaking on appeal by this defendant, the National Surety Company, which was in the usual form, to the effect that the appellant did undertake that if the judgment or order appealed from should be affirmed the appellant would pay the sum recovered or directed to be paid by the judgment. The judgment was affirmed in the Appellate Division in May, 1913, and in the Court of Appeals in November, 1914. [*City of New York v. Brooklyn, Q. C. & S. R. R. Co.*, 156 App. Div. 856; affd., 213 N. Y. 634.] Thereafter, after this affirmance in the Court of Appeals, the railroad company commenced an action against the city on a money claim for the value of toll rights as a plank road corporation which it had theretofore released to the municipal authorities on condition of being relieved of the expense of maintaining pavements on Jamaica avenue. In that action it demanded an injunction against the city to restrain it from collecting the judgment heretofore

mentioned of over $70,000. In the injunction action the railroad company, in order to secure the granting and continuance of the injunction order, gave an undertaking by another surety company, the Fidelity and Deposit Company of Maryland, in which that surety undertook to and with the city that the railroad company would pay the sum of $71,000, which was then the amount of the original judgment, in case the court should finally decide that the railroad company was not entitled to the injunction, and that they would further pay to the city all damages and costs awarded in the injunction action, not exceeding $1,000. In the injunction action the railroad company recovered $237,147.60 and the city was perpetually enjoined from collecting its judgment against the railroad company. The city appealed from the restraining judgment, and during this appeal's pendency the Special Term made an order canceling the second surety's bond given in the injunction action. Afterward, on the appeal from the injunction judgment the Appellate Division reversed the same and granted a new trial, but the railroad company appealed to the Court of Appeals, giving stipulation for judgment absolute, and in July, 1920, the Court of Appeals affirmed the order of the Appellate Division and dismissed the railroad company's complaint. [See *Brooklyn, Q. C. & S. R. R. Co.* v. *City of New York*, 182 App. Div. 32; affd., 229 N. Y. 260.] In this suit by the city on the National Surety Company's undertaking to pay the original judgment of $70,000, the defendant contends that because of the injunction proceedings and appeals, the right of the first surety to pay the judgment and seek immediate reimbursement from the debtor was cut off for four years, and the risk of the first surety was converted from a risk that the debtor would become insolvent within two years to a risk that the debtor would become insolvent in six years, and that the city's failure to take an appeal from the order granting the motion to cancel the other surety's bond, pending an appeal, or to notify the first surety of the proceedings of the second surety in its endeavor to be judicially released from its undertaking, prevented the first surety exercising a right to call upon the second surety for reimbursement by subrogation after the first surety paid the city's judgment. It is contended that the order canceling the second surety's undertaking was manifestly erroneous, and that it was the duty of the city to its first surety to take this appeal so that the second surety's undertaking would be kept alive, or to give the first surety notice to come in and defend against its co-obligor's application to be released. There are two questions involved here: *First.* Has the first surety the right of reimbursement by subrogation against the second surety? *Second.* Did any negligent omission by the creditor, the city, result in the release of the second surety? In other words, was the city lacking in diligence in opposing the cancellation of the Fidelity Company's undertaking, or in its failure to notify its first surety of the proceeding? It is doubtless true that the second surety, by interposing and intervening in the litigation so as to postpone the time of judgment, became liable to the first surety for reimbursement for anything which the first surety had to pay on account of the delay, because, as the Court of Appeals said in *Hinckley* v. *Kreitz* (58 N. Y. 583): His interposition may have been the means of involving the first surety in ultimate liability to pay * * * [and] that the later sureties are primarily liable as between them and the first sureties and * * * the release of such later sureties by the creditor discharged the defendants, because it deprived them of a remedy over to which they would otherwise have been entitled."

But where the security has not been preserved and at the time that the first surety is called upon to pay the undertaking the second surety is no longer available for his benefit, he does not necessarily escape liability to the creditor. If through no fault of the creditor, the second undertaking was so rendered unavailable to the first surety, the creditor cannot be held to suffer a loss which falls upon the first surety through the second surety's discharge where his rights against the second surety have not been interfered with by the creditor's negligence or misconduct, but the first surety is doubtless discharged if the creditor voluntarily releases the second surety. Any other rule would permit the creditor by collusive caprice to defeat the adjustment of the rights and liabilities of the parties which equity prescribes and to release a primary debtor against the interest of a second. A voluntary release by the creditor, therefore, of a second surety forfeits his right to proceed against the first. It is true also that a lack of exercise of ordinary diligence in preserving the securities in the control of the creditor which are applicable to the debt for which another surety is liable also releases the surety against whose interest these other securities are lost or destroyed through lack of care or negligence of the creditor. He must exercise the same care as a prudent man would exercise in his own interest to preserve other security than that upon which he primarily relies. *Shutts* v. *Fingar* (100 N. Y. 539) says that in an action where the effect of the creditor's negligent omission to act discharged a party primarily liable " where such consequences are produced by the direct action of the creditor all of the authorities concur in holding that it constitutes a good defense. * * * It is difficult to see why the same consequences produced by the deliberate laches and inaction of the creditor should not lead to the same result." It discharged a surety in that suit who had been prejudiced by the conduct of his creditor. This being the rule, I think that it is obvious that on proof of the facts alleged in the answer a jury might properly find that the creditor was not diligent in opposing the cancellation of the Fidelity Company's undertaking. The answer sets forth that the order which canceled the second surety's undertaking was erroneous; that the creditor knew it was erroneous; that it failed to notify the first surety company of the making of the motion or the entry of the order, and that the creditor failed to take the appeal to preserve the rights of the first surety. If such facts are established in proof, there would be sufficient evidence to support a finding that the creditor was not diligent. The whole situation is well summarized as follows: The risk of the National Company was increased by the intervention of the Fidelity Company, so that if the undertaking of the Fidelity Company had not been canceled and the National Company had been required to pay the judgment, equity would have adjusted the rights of the parties by requiring the Fidelity Company to reimburse the National Company. The rule is universal that if the first surety's right to reimbursement from the second surety is lost through the negligence of the creditor, the equities of the parties are preserved by giving the first surety an equitable defense against a suit by the creditor. The case now here presents nothing that makes the application of this general rule inequitable, and on the contrary the circumstances make out equitable considerations that strongly favor the first surety because no amount of foresight or diligence on its part would have protected it, and because, on the part of the creditor, notification — the simplest and most obvious act involving no expense or trouble — would have given the surety complete

protection. The allegations in the defense contained in the answer are sufficient to sustain the legal theory of that defense. In answer to the city's contention that the National Surety Company could have paid the judgment after the granting of the injunction, it is obvious it could not then have sought reimbursement from the railroad company since the collection of such judgment was then prohibited by injunction, and its remedy of subrogation against the original debtor would have been of no value while the injunction persisted. A debt actually uncollectible by the creditor does not make through a payment by the surety a right to immediate reimbursement to the surety from the debtor. It cannot seek the reimbursement until the debt is collectible. Under all these considerations I think the defense pleaded, if established, would give the surety a release from its undertaking, and, therefore, the motion to strike it out should have been denied. The order should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs. Smith, J., concurs.