ERNEST BINNINGER, Respondent, *v.* THE CITY OF NEW YORK,
et al., Appellants.

1. RAILROADS — WHEN FRANCHISE GRANTED TO STREET SURFACE
RAILROAD BY MUNICIPALITY DOES NOT CONSTITUTE A PRIVATE CON-
TRACT — WHEN PROVISIONS THEREOF RELATING TO REPAIR OF
STREETS MAY BE CHANGED. A resolution of the common council
of a city authorizing a street railroad company to construct and
operate a street surface railroad in certain streets of the city, upon
the condition, among others, therein named, that the company keep
the pavement within its tracks and three feet on each side thereof in
thorough repair with certain stone under the direction of authorities to be
designated by the common council, does not constitute a private contract
between the railroad company and the municipality; but is rather in the
nature of charter legislation which may be at any time amended as the
legislature deems necessary in view of changed conditions and the interests
of the general public, since the powers of a municipality in respect to
the control and regulation of its streets are held in trust for the public
benefit and it cannot release control thereof for all future time; it may,
therefore, under subsequent legislation, adopt and enforce a resolution to
repave a street through which the railroad runs with a different material,
and assess one-fourth of the cost thereof upon the railroad company.

2. SAME — WHEN CONTRACT TO REPAVE STREET AND KEEP IT IN REPAIR
FOR FIXED TERM OF YEARS BETWEEN MUNICIPALITY AND PAVEMENT
CONTRACTOR RELIEVES RAILROAD COMPANY FROM REPAIR OF STREETS
AND LIABILITY FOR DEFECTS IN PAVEMENT. Where the city under a pro-
vision of its charter, as subsequently amended, providing for the repair-
ing and repaving of streets, entered into a contract with a paving com-
pany to repave a street, through which such railroad was constructed and
operated, and to maintain the pavement in good condition to the satisfac-
tion of the commissioner of public works of such city for the period of
five years from the final completion and acceptance thereof, and assessed
one-fourth of the cost thereof upon the railroad company, assuming the
payment of such assessment, the company is thereby relieved, during the
period of five years, from the obligation of keeping the street in repair as
required by the resolution constituting its franchise, or by the general
provisions of the Railroad Law relating to the care of streets occupied by
street surface railroads (L. 1890, ch. 565, § 98, as amd. by L. 1892, ch. 676)
and is not liable for injuries caused, within such period of five years, by
an opening left alongside the tracks of the company in a street repaved
under the resolution adopted for that purpose, and the contract made in
pursuance thereof.

*Binninger* v. *City of New York*, 80 App. Div. 438, modified.

(Argued December 10, 1903; decided January 12, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 25, 1903, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinions.

*George L. Rives, Corporation Counsel (James McKeen* of counsel) for city of New York, appellant.    Section 98 of the Railroad Law was a valid enactment and was in full force and effect and was applicable to the Brooklyn Heights Railroad Company at the time this accident happened. (*N. O. G. Co.* v. *L. L. Co.,* 115 U. S. 672; *Beer Co.* v. *Massachusetts,* 97 U. S. 25.)    There was no impairment of the obligations imposed by the franchise of 1853. (*Vil. of Mechanicville* v. *S. & M. S. Ry. Co.,* 35 Misc. Rep. 513; 174 N. Y. 507; *Doyle* v. *City of New York,* 58 App. Div. 588; *Eckert* v. *City of New York,* 59 App. Div. 61; *Conway* v. *City of Rochester,* 157 N. Y. 33.)

*Charles A. Collin, William F. Sheehan, John L. Wells* and *Thomas L. Hughes* for Brooklyn Heights Railroad Company, appellant.    The provisions of the charter of the city of Brooklyn and the proceedings of the city thereunder, in relation to the construction and repair of this particular pavement, relieved the defendant railroad company from any liability to keep the pavement in repair, even if otherwise such a liability would have rested on the railroad company. (L. 1895, ch. 1008; *Welch* v. *S. R. T. Co.,* 70 App. Div. 362.) The defendant railroad company was not under obligation to construct or keep in repair the pavement in question by virtue of the charters and franchises by which it and its lessor company had constructed, maintained and operated the railroad in question. (*City of Brooklyn* v. *B. C. R. R. Co.,* 47 N. Y. 475; *Dean* v. *City of Paterson,* 67 N. J. L. 199; *Vil. of Mechanicville* v. *S., etc., Ry. Co.,* 35 Misc. Rep. 513.) The pavement obligations of the defendant railroad company as successor by lease of the Brooklyn City Railroad Company

were fixed by the franchise contract of December 19, 1853, the terms of which could not be changed except with the consent of the contracting railroad company, its successors or assigns. (*B. C. R. R. Co.* v. *B. C. R. R. Co.*, 32 Barb. 358 ; *De Graun* v. *L. I. El. Ry. Co.*, 43 App. Div. 502; *City of Walla Walla* v. *W. W. W. Co.*, 172 U. S. 1; 60 Fed. Rep. 957 ; *V. W. W. Co.* v. *Vicksburg*, 185 U. S. 65 ; *L. F. L. & W. Co.* v. *City of Little Falls*, 102 Fed. Rep. 663 ; *N. O. G. L. Co.* v. *L. L., etc., Co.*, 115 U. S. 650 ; *N. O. W. W. Co.* v. *Rivers*, 115 U. S. 674 ; *L. G. Co.* v. *C. G. L. Co.*, 115 U. S. 674 ; *St. T. W. W. Co.*, v. *N. O. W. W. Co.*, 120 U. S. 64 ; *A. W. W. Co.* v. *H. W. Co.*, 115 Fed. Rep. 171.)

*Isaac M. Kapper* and *Thomas E. Pearsall* for respondent. The duty of the defendant railroad company to keep and maintain this street within the space occupied by its railroad tracks and three feet outside thereof in reasonably safe repair, at the time of the happening of the occurrence to the plaintiff, flowed from the language of its franchise, in the acceptance of which it agreed with the municipality to keep the pavement within the tracks and three feet on each side thereof in thorough repair. (*City of Brooklyn* v. *B. C. R. R. Co.*, 47 N. Y. 475 ; *McMahon* v. *S. A. R. R. Co.*, 75 N. Y. 231; *Eckert* v. *City of New York*, 59 App. Div. 611 ; *Sullivan* v. *S. I. R. R. Co.*, 50 App. Div. 558 ; *Simon* v. *M. S. R. Co.*, 29 Misc. Rep. 126.) It was equally the duty of the defendant railroad company, under section 98 of the General Railroad Act (L. 1892, ch. 676) to " have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in width outside its tracks." (*Potter* v. *Collis*, 156 N. Y. 16 ; *Davis* v. *Mayor, etc.*, 14 N. Y. 506 ; *Milhau* v. *Sharp*, 27 N. Y. 611 ; *Beekman* v. *T. A. R. R. Co.*, 153 N. Y. 152 ; *B. C. R. R. Co.* v. *B. C. R. R. Co.*, 32 Barb. 358 ; *Vil. of Mechanicville* v. *S., etc., Ry. Co.*, 35 Misc. Rep. 513 ; 67 App. Div. 628 ; 174 N. Y. 507 ; *Weed* v. *Binghamton*, 26 Misc. Rep. 208 ; *Conway* v. *City of Rochester*, 24 App. Div. 489 ; 157

N. Y. 33; *McMahon* v. *S. A. R. R. Co.*, 75 N. Y. 231; *Mayor, etc.*, v. *S. A. R. R. Co.*, 102 N. Y. 572.)

BARTLETT, J. The main question raised on this appeal by the defendant railroad company is, whether, on the undisputed evidence, it rested under any liability to keep the pavement in repair, within the statutory limits, on Court street, between Fulton and Joralemon streets, in the borough of Brooklyn, or, whether the city of New York is solely liable. The city of New York insists that the railroad company is ultimately liable to pay the judgment which the plaintiff has recovered herein.

The plaintiff was injured December 29th, 1900, by reason of driving into an opening negligently left in Court street, between Fulton and Joralemon streets, alongside the track of the defendant railroad company, whereby he was thrown to the pavement and severely injured. The jury rendered a verdict in favor of plaintiff and against both defendants for $3,750.00, upon which judgment was entered and unanimously affirmed by the Appellate Division.

The first point raised by the railroad company is, that its paving obligations, as successor by lease of the Brooklyn City Railroad Company, were fixed by the franchise contract of the latter, the terms of which cannot be changed except with the consent of the contracting railroad company, its successors or assigns; that legislation changing this agreement in any respect would be unconstitutional as impairing the obligation of the contract.

It appears that the Brooklyn City Railroad Company constructed the railroad in question in the year 1854. The so-called franchise contract is a resolution of the common council of the city of Brooklyn, passed December 19th, 1853, which recites that the various individuals named therein were the lowest bidders under the resolutions adopted by the common council on the 16th day of the last preceding September, for constructing the various lines of railroads mentioned. It also recites that the persons named, and others associated with

them, were duly incorporated under the Railroad Law of 1850, by the name of the Brooklyn City Railroad Company, for the purpose of constructing, maintaining and operating said lines of railroad with a double track for public use in the conveyance of persons and property; also, that the railroad company desired the assent of the corporation of the city of Brooklyn to the construction, maintenance and operation of the railroad. The resolution then follows, giving the assent of the city and the names of the various streets through which these railroad lines were to run, including the location involved in this action. This assent was given, subject to various conditions unnecessary to refer to in detail, as to the character of the track, roadbed, cars, rate of fare and other matters.

The following was among the conditions named: " The pavement to be kept in thorough repair by said company within the tracks and three feet on each side thereof with the best water stone, under the direction of such competent authority as the common council may designate."

The articles of incorporation of the Brooklyn City Railroad Company, under the act of 1850, are not in evidence. We have only the resolution referred to and a brief exhibit which states that the Brooklyn City Railroad Company has leased to the defendant company, for a term of nine hundred and ninety-nine years, the street railroad on Court street, in the city of Brooklyn; also all franchises, rights and assignments of whatsoever nature then or thereafter possessed or owned by the lessor. This lease is dated February 14, 1893.

In 1854 (Chap. 140) the legislature passed an act entitled "An act relative to the construction of railroads in cities," which provided, in substance, that the common council of cities should not thereafter permit to be constructed any street railroad without the consent thereto of a majority in interest of the owners of the property upon the streets in which such railroad is to be constructed being first had and obtained.

It was also enacted as follows: "After such consent is obtained, it shall be lawful for the common council of the

city in which such street or avenue is located to grant authority to construct and establish such railroad, upon such terms, conditions and stipulations, in relation thereto, as such common council may see fit to prescribe."

It was also further enacted as follows : " This act shall not be held to prevent the construction, extension or use of any railroad, in any of the cities of this state, which have already been constructed in part; but the respective parties and companies, by whom such roads have been in part constructed, and their assigns, are hereby authorized to construct, complete, extend and use such roads, in and through the streets and avenues designated in the respective grants, licenses, resolutions or contracts under which the same have been so in part constructed, and to that end the grants, licenses and resolutions aforesaid are hereby confirmed."

This latter legislation seems to indicate that the original resolution of the common council of the city of Brooklyn, passed the previous year, needed confirmation and legislative approval.  Be that as it may, we are of the opinion that the original resolution of the city of Brooklyn in evidence, relating to keeping the pavement in repair between the tracks and three feet on each side thereof with the best water stone, cannot be regarded. as a private contract between the Brooklyn City Railroad Company and the municipality, but is rather in the nature of charter legislation which may be at any time amended as the legislature deems necessary in view of changed conditions and the interests of the general public.

When the Brooklyn City Railroad Company agreed to pave and keep in repair a certain portion of the street occupied by its tracks, it undertook to discharge, in part, a duty imposed upon the municipality. by the legislature.

In *City of Brooklyn* v. *Brooklyn City Railroad Co.* (47 N. Y. 475, 485) the court said : " Thus a municipal corporation, by the conferring and acceptance of a charter with powers of opening and controlling streets and ways, has put upon it the correlative duty to the public of keeping those ways in repair, so that they may be safe for the passage of the

public. When one contracts with that corporation to keep any portion of those streets in repair, in consideration of a license to use them to his benefit in an especial manner, he in effect contracts to perform that duty to the public in the place and stead of the municipality, and the way is given over to him for that purpose, and he takes it into his care and charge therefor, and his failure to perform his contract is a failure to do that duty, and the damages which naturally and proximately result from nonperformance, are all the damages which naturally and proximately fall upon the corporation from the duty not being performed."

It cannot be assumed that when the Brooklyn City Railroad Company, in the year 1853, for its own convenience in operating horse cars on its tracks, agreed to lay a pavement suitable for such purpose, that the municipality released control of the street for all future time as to the character of the pavement, as it possessed no such power. It appears that after many years the motive power was changed and the convenience and safety of the public required a different kind of pavement.

In *Milhau* v. *Sharp* (27 N. Y. 611) this court decided that the powers of a municipal corporation, in respect to the control and regulation of its streets, are held in trust for the public benefit and cannot be abrogated nor delegated to private parties.

This court has recently recognized the principle in *Village of Mechanicville* v. *Stillwater & Mechanicville Street Railway Co.*, decided at the St. Lawrence Special Term in July, 1901, and reported in 35 Misc. Rep. 513. This case was affirmed in the Appellate Division (67 App. Div. 628) and in this court (174 N. Y. 507) without opinions. The learned judge at Special Term stated: "The defendant claims that a contract was made and a franchise given, specifying the kind of paving to consist of small stone between the rails and twenty inches outside, which could not be altered by the legislature or by the requirements of the situation, and that chapter 494 of the Laws of 1901 (§ 1) ratifies pre-existing

contracts with street railway companies in cities of the third class, towns or villages."

It appears that the two so-called franchises were given to the defendant and contracts made by it with the village in pursuance of the resolution of the trustees, each providing that the space between the rails and the space of at least twenty inches outside of the said rails on both sides of the tracks should be paved with small stone, and that the same should at all times be kept in good condition. Some years thereafter a notice was served by the village requiring a six-inch excavation filled in with sand or gravel and covered with vitrified paving brick. The railway company declined to conform to this notice.

This court has thus held that it was competent for the municipality, acting under delegated legislative power, to require, after a change in condition and the lapse of some years, a different material in paving the street under the agreement of the railway company. This construction has received legislative recognition in the revision of the Railroad Law (Laws of 1892, chap. 676, § 98). That section provides, in substance, as follows: "Every street surface railroad corporation so long as it shall continue to use any of its tracks in any street, avenue or public place in any city or village shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, *and in such manner as they may prescribe.*"

This brings us to the consideration of the second point raised by the railroad company, which is, in substance, that if it be assumed that the resolution of the common council of the city of Brooklyn in December, 1853, was not a private contract between the city and the railroad company, and that by reason of section 98 of the present Railroad Law the defendant company would be subject to its conditions, under ordinary circumstances, that nevertheless certain provisions of the charter of the city of Boooklyn and action taken thereunder

relieved the defendant company from the obligation to pave the street between its tracks and for a distance of two feet upon either side and to keep the same in repair at the time and place of the accident in question.

Section 50 of the charter of the city of Brooklyn was amended by chapter 1008 of the Laws of 1895, and again by chapter 771 of the Laws of 1896. The latter amendment does not affect the section as to the question now presented. The material portions of that section as so amended read as follows.:

"The said board of estimate shall each year include in their estimate of the amount required to be raised for city purposes the amount necessary to meet, during the year, any existing contract for the cleaning of streets, and also the proper proportionate amount of the sums estimated as required to be expended under the provisions of section 46 of this title, and also such an amount as they may deem necessary and proper for the purpose of repairing and also improving the condition of the streets and avenues of the city by *repaving* the same, and the amount included in the annual tax levy of the city for the purpose of repaving shall be expended by the commissioner of city works, with the consent and approval of the mayor, in repaving any street or avenue of the city or portion' thereof, with granite blocks or Belgian or other improved pavement. The common council may also upon the petition of a majority of the property owners, or the owners of a majority of the property to be affected, or by a three-fourths vote of the board of aldermen and the consent of the mayor without such petition, repave with asphalt, granite or other improved pavement, any street already paved at the expense of the property owners. One-half of the cost of such repavement shall be borne by the city at large and the other half by the property benefited. * * * Provided, however, that in all cases where a surface railroad is laid and operated through any such street, one-fourth of the cost of such repavement shall be assessed upon such railroad, and one-fourth thereof on the other property benefited within the district of assessment."

The charter of Greater New York went into effect January 1st, 1898, and the amended charter January 1st, 1901. It was provided in the former (§ 49, subd. 21) and in the latter (§ 49, subd. 17) as follows : " And the board of aldermen shall also fix the annual license fee, not exceeding the sum of twenty dollars, for each street or horse car daily operated or used in that portion of the city heretofore known as the city of Brooklyn.  *  *  *   The said license fees shall be taken in full satisfaction for the use of the streets or avenues, but the same shall not release said company from any obligations required by law to keep such streets and avenues, or any part thereof, in repair, which said obligations and the contracts, laws or ordinances, creating and enforcing the same, are hereby continued in full force and operation.   But nothing in this subdivision contained shall be construed to release any railroad company in the city of New York, as constituted by this act, from any duty or obligation existing at the time this act takes effect by virtue of any law, ordinance or contract."

On the 20th day of January, 1896, while the former charter of the city of Brooklyn was in force the common council passed a resolution which was read in evidence, in part as follows : " *Resolved*, that this common council *intends to repave* Court street from Joralemon street to Fulton street (through which said street a surface railroad is laid and operated) with asphalt pavement, pursuant to the provisions of chapter 1008 of the Laws of 1895. *Resolved*, that the district of assessment for such improvement be and the same is fixed on the property lying on and along the lines of said Court street, between Joralemon street and Fulton street, on each side of said Court street, between the points above specified, including the said railroad on said Court street, between Joralemon street and Fulton street, upon which district one-half of the cost of such improvement will be assessed pursuant to the provisions of said statute as follows : One-fourth of the cost of said pavement shall be assessed upon said railroad and one-fourth thereof on the other property benefited within the district of the assessment aforesaid."

On the 15th day of June, 1896, the report of the committee on grading and paving was made to the common council of the city of Brooklyn and was read in evidence. The material portion reads as follows : " The Committee on Grading and Paving, to whom was referred the matter of *repaving* Court street, from Joralemon street to Fulton street, with asphalt pavement, pursuant to the provisions of Chapter 1008 of the Laws of 1895, report   *   *   *   Resolved that this common council does hereby determine and decide to *repave* Court street, from Joralemon street to Fulton street, with asphalt pavement, pursuant to the provisions of Chapter 1008 of the Laws of 1895, and the said improvement is necessary and proper   *   *   *."

Thereafter and on the 4th day of September, 1896, the city of Brooklyn entered into a contract with the Brooklyn Alcatranz Asphalt Company under said section 50 of the charter, as amended, by which the asphalt company agreed to lay the pavement in question, and to maintain the said work in good condition and to the satisfaction of the commissioner of public works for the period of five years from the final completion and acceptance thereof.

The defendant railroad company claims that by reason of these proceedings, under the charter, and by virtue of other provisions contained in that instrument, unnecessary to consider in detail at this time, it is relieved from liability.

There is no evidence in this record that the railroad company was assessed and paid its one-quarter of the tax to meet the expense of this *repaving*, but we are of opinion it must be assumed for the purposes of this case that such was the fact, as it appears that the city of Brooklyn, by its contractor, the asphalt company, proceeded to *repave* Court street with asphalt in pursuance of the resolution of the common council, to which reference has been made.

It is argued that while it may be admitted that the railroad company was relieved from all expense, other than the tax imposed upon it, for *repaving* Court street with asphalt, including the space between and alongside its tracks, that

14

nevertheless it rested under the obligation to keep that pavement in repair, when completed, under section 98 of the Railroad Law.

This contention rests, in part, upon the somewhat technical point that the resolution of the common council, under which the city proceeded, referred only to *repaving,* and that the provision in the contract between the city and the asphalt company, requiring the latter to maintain its work in good condition for the period of five years from its final completion and acceptance, was not embraced within the municipal scheme.

We are inclined to a more liberal construction and hold that, as section 50 of the charter, as amended, contemplates raising money for repairing as well as repaving streets, the railroad company, during the five years succeeding the completion of the work by the asphalt company under its contract with the city, rested under no obligation to keep in repair the street within the statutory limits referred to in section 98 of the Railroad Law.

It must be assumed that the city discharged its duty and exacted from the railroad company its share of the expense for repaving and keeping in repair the street for five years, and it would be inequitable to impose upon the defendant company the obligation to repair, which, under ordinary circumstances, might rest upon it.

The railroad company as a taxpayer under this special assessment is entitled to every benefit secured by the city in its contract with the asphalt company.

There is no privity between the railroad company and the asphalt company, but the former having presumably paid its share of the tax for the expense of the work of repaving and repairing, may assume that the city will see to it that all repairs are made during the term of its contract with the asphalt company.

If the asphalt company failed or refused to perform the city would nevertheless be liable, so far as the railroad company is concerned, to keep the pavement in repair until the expiration of the contract.

As the accident to the plaintiff occurred in December, 1900, it is apparent that the contract with the asphalt company was still in force, as the period of five years had not expired.

In view of the very imperfect condition of this record, concerning the transactions between the city and the railroad company in the premises, we express no opinion as to the legal situation which came into existence on the expiration of the contract with the asphalt company.

The city of Brooklyn is primarily liable in this action, and must pay the judgment recovered by the plaintiff.

The judgments and orders appealed from should be reversed and the complaint dismissed as to the defendant, The Brooklyn Heights Railroad Company, with costs against the plaintiff, and affirmed as to the City of New York, with costs to the plaintiff, to be paid by the city.

PARKER, Ch. J. I agree with Judge BARTLETT's position, including his recommendation that plaintiff should pay costs to defendant railroad company.

There never has been any doubt of the liability of the city for plaintiff's injuries, so plaintiff could have proceeded against it with perfect safety and with reasonable confidence that if judgment was procured it could be collected from defendant city. But instead plaintiff chose to take the risk of making defendant railroad company also a party to the action, and quite likely for the reason that his counsel assumed that a larger verdict could be obtained against the railroad company and the city together than against the city alone. But whether that was the reason or not, he undertook to make an *unnecessary* party a defendant with some hope of benefit to plaintiff; and it having turned out that it was *improperly* made a party, plaintiff should bear such portion of the responsibility for the error as the taxable costs constitute.

It is undoubtedly true as this court holds in *Conway's Case* (157 N. Y. 33) — speaking of municipalities as to which there is no legislation to be regarded as modification of section 98 of the Railroad Law — that under that section "the duty of

keeping such portion of the streets in permanent repair [by the railroad company] is not suggested or advised, but is commanded." But that section must be read in connection with local statutes, where there are any bearing upon the subject, as is the case in the city of New York. It would be absurd to read section 98 as applying to the railroads of the city, and to read the charter as affording an entirely independent proceeding, placing additional burdens upon the railroad company. Section 98 of the Railroad Law provides that the railroad company shall keep the streets in repair between the tracks and for two feet outside; and — inasmuch as it is held in *Conway's Case* (*supra*) that the city authorities may determine that the entire street shall be repaved, and with asphalt, but that they may not impose upon the abutting owners the expense of repaving between the railroad tracks and for two feet outside — the burden of repaving that part of the street must be upon the railroad company under section 98.

So under that authority — if that section was the governing section when the street in question was repaved with asphalt — the railroad company would have been required to bear the cost of repaving between the tracks and for two feet outside, leaving the abutting owners to bear the rest of the expense. But the local authorities did not understand that section 98 controlled. They found a provision of the charter which requires the railroad company to pay 25% of the expense of repaving the streets, and the municipal authorities followed their charter, not section 98 of the Railroad Law; and they were right because the charter is inconsistent with section 98, and should be construed as a modification of the general law so far as the city of New York is concerned. Otherwise we should have the absurd result of treating the two statutes as cumulative so far as they concern the burdens of the railroad company as to street improvements — section 98 requiring the railroad to repave between the tracks and for two feet outside, and the charter requiring the railroad to pay 25% of the cost of repaving the entire street.

The general statute and the charter may be harmonized and

read together so as to produce the result undoubtedly intended by the legislature. And thus read, while the general duty to repair between the tracks and for two feet outside rests upon the railroad as between it and the city — a duty which the city may enforce — still in case the local authorities elect to repave the whole street, the charter provisions apply, and under them the city has full control of the matter of repaving and may impose 25% of the cost upon the railroad company, and cannot impose more or less, notwithstanding the provisions of section 98, which within the city of New York do not apply when a repavement is made by the city.

Proceedings were taken under the charter to repave the street and to keep that repavement in repair for 5 years. The contract was to that effect, and the assessment made to meet the expense of such repavement included the amount necessary to keep the repavement in repair for 5 years.

Can any one deny that the city has the right to do this? Is it questioned that the extra expense of obtaining a contract that the repavement should be kept good for the period of 5 years is a proper expense, and one that may be collected out of those obligated to repave the street? I have heard no sug- gestion of doubt as to how these questions should be answered. For concededly the city has the right under its charter to make such a contract, and those charged with the expense of repaving must be bound to pay the extra cost of obtaining a contract to keep the repavement in repair for 5 years.

The municipal authorities, therefore, did precisely what they had the right to do, and having obtained a contract that the repavement should be kept in repair for 5 years, sup- ported by a sufficient bond for faithful performance, the rail- road company was relieved for that period from the duty of repairing in so far at least as ordinary wear and tear was con- cerned; for the city, having full authority in the premises, had provided for keeping the street between the tracks as well as elsewhere in repair, and had presumably collected the money needful therefor.

That the railroad company and the officials connected with

the highway department of the city recognized this to be the effect of what was done in connection with the repavement of the street is shown by the letter written less than 5 months before the accident by one of the railroad company's engineers to the city engineer of highways calling his attention to holes, one of which occasioned this accident. He said : " I believe the contractor is under guaranty to keep this pavement in repair for 5 years. Will you kindly take steps to have the pavement put in better shape before there is any cause for a suit for damages ? " To this the principal assistant engineer of the highway department replied four days later : " The contractor this morning took out a permit for repairing the same, and I presume the work will be done at once." But the repairs were not actually made ; and about 5 months thereafter — but within the period of 5 years covered by the contract — this accident happened. For it the city is responsible, and I believe — under the statutes which are referred to in detail in Judge BARTLETT's opinion and in the dissenting opinion — it alone is responsible.

CULLEN, J. (dissenting). As I concur with Judge BARTLETT in the view that the terms and conditions of the consent given by the city of Brooklyn in 1853 to the Brooklyn City railroad for the construction of its road, did not constitute such a contract as to exempt that company and the appellant, the Brooklyn Heights Railroad Company, its lessee, from the provisions of section 98 of the Railroad Law (Ch. 676, Laws 1892), it is necessary for me to discuss only the question whether the repavement of the street by the city authorities relieved the appellant from the duties and obligations which concededly would otherwise rest upon it under the section of the Railroad Law cited. By that section it is enacted : " Every street surface railroad corporation so long as it shall continue to use any of its tracks in any street, avenue or public place in any city or village shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in width

outside of its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe." This duty was imposed on street railroad companies for the safety and security of the traveling public as well as for the pecuniary benefit of the municipality, and rendered every company liable to any traveler who might be injured by the failure of the company to discharge its obligation. (*McMahon* v. *Second Ave. R. R. Co.,* 75 N. Y. 231.) Though the city was not relieved from responsibility for the safety and security of its streets, the obligation as to the part of the street lying between and adjacent to the tracks was primarily on the railroad company. (*City of Brooklyn* v. *Brooklyn City R. R. Co.,* 47 N. Y. 475.) As was said by this court in *Conway* v. *City of Rochester* (157 N. Y. 33), " the duty of keeping such portion of the streets in permanent repair (by the railroad company) is not suggested or advised, but is commanded." Such were the rights and duties of the parties when the city repaved the street with asphalt under the provisions of section 50, title 15 of the charter of the city of Brooklyn. (Ch. 583, Laws of 1888, as amended by ch. 1008, Laws of 1895.) The section directed the board of estimate to raise each year such amount " as they may deem necessary and proper for the purpose of repairing and also improving the condition of the streets and avenues of the city by repaving the same." It provided that the common council might, upon the petition of a majority of the property owners, or by a three-fourths vote without such petition, " repave with asphalt, granite or other improved pavement, any street already paved at the expense of the property owners. One-half of the cost of such repavement shall be borne by the city at large and the other half by the property benefited. * * * Provided, however, that in all cases where a surface railroad is laid and operated through any such street, one-fourth of the cost of such repavement shall be assessed upon such railroad, and one-fourth thereof on the other property benefited within the district of assessment." This section does

not purport to relieve in any manner the railroad company from its duties imposed under the Railroad Law, to keep its portion of the street in repair. If we assume, however, that as the charter authorized the city to do the repaving the railroad company could not be held responsible for the laying of such pavement, this principle would have no application as to its duty to maintain the street in repair after the pavement had been laid. The resolution of the common council which was a prerequisite to any action by the administrative officers of the city authorizes only repaving the street. My associate is of opinion that the difference between repaving and repairing the street is technical and narrow. I, on the contrary, think that a radical distinction between the two is made both by the charter itself and by the decisions of this court. Not only does section 50 distinguish between repairing and repaving by providing that money may be raised for both purposes, while authorizing an assessment to be laid only for one, repaving, but section 48 of the same title provides in express terms: "The expense of repairing the streets of said city shall be a general city charge; and the commissioner of city works shall have exclusive power in relation to the repairing of streets, but in no one year shall such expense exceed the amount raised for that purpose in the general tax levy." Thus the expenditure of all moneys raised under section 50 for the repair of streets was under the exclusive control of the commissioner, and the common council had nothing to do with it; while, on the contrary, repaving, which was to be followed by a local assessment, could only be made on the action of the common council. Therefore, if the contract entered into by the commissioner of public works with the asphalt company which provided for keeping the pavement in repair subsequent to the time it was laid down, purported to relieve the railroad company from its statutory obligation to the public, it was solely the unauthorized act of an administrative officer of the city and was in that respect of no validity.

I have said that the distinction between repaving and

repairing the pavement is recognized by the judicial decisions. (See *People ex rel. Hall* v. *Maher*, 56 Hun, 81 ; *City of Schenectady* v. *Union College*, 66 Hun, 179 ; *People ex rel. North* v. *Featherstonhaugh*, 172 N. Y. 112.) In the case last cited an award of a contract for repaving a street was assailed on the ground that the contract required the contractor to keep the street in repair a certain number of years. It was there said by this court : " It will readily be seen that the question raised is one of considerable importance to the public, especially to the cities whose charters provide for the construction of pavement in streets at the expense of the abutting owners of real property, or the property benefited, and that the pavement when constructed shall be kept in repair at the expense of the city." The award of the contract was upheld on the sole ground, however, that "the repairs required by the contract have reference to making good the imperfect work done, or the defective material used therein. In other words, that it is in effect a guaranty as to the quality and character of the pavement." Whether the same construction is to be given to the provisions of the contract before us it is not necessary to now determine. That question would be presented if an assessment levied for the cost of the improvement should be assailed. There is no proof in the record that the appellant railroad company has paid any such assessment. In the absence of proof no presumption to that effect arises.

The judgment should be affirmed, with costs.

GRAY, O'BRIEN, JJ. (and PARKER, Ch. J., in opinion), concur with BARTLETT, J. ; CULLEN, J., reads dissenting opinion and MARTIN, J., concurs ; HAIGHT, J., absent.

Judgment accordingly.