Mary Burke, Plaintiff, *v.* City of New York, Respondent, and I. Howard Lehman et al., as Trustees in Reorganization of Third Avenue Transit Corporation, Appellants.

First Department, May 10, 1955.

*Edward D. Burns* of counsel (*Addison B. Scoville* and *Stuart Riedel* with him on the brief; *Saxe, Bacon, O'Shea & Bryan*, attorneys), for appellants.

*Fred Iscol* of counsel (*Seymour B. Quel* with him on the brief; *Leo A. Larkin, Acting Corporation Counsel,* attorney), for respondent.

BOTEIN, J.  Plaintiff, while walking across Melrose Avenue, in Bronx County, caught her foot in a hole underneath the rail of an unused trolley track, pitched forward and sustained serious injuries.  There was testimony that the cobblestone roadway sagged a good six inches below the lip of the rail at the point where the accident occurred, and that this condition had existed for several months.

Until some years before the date of this accident the Third Avenue Railway Company, which defendant trustees have succeeded in interest, had operated a street surface railway over these tracks. Plaintiff sued the City of New York and the trustees. After trial without a jury, she secured a judgment against all defendants. The Trial Justice then directed judgment over against the trustees, and in favor of the city, on the latter's cross complaint. None of the defendants raises any question with respect to liability to the plaintiff; but the defendant trustees appeal from the judgment rendered on the city's cross complaint.

On November 9, 1940, the city and the railway company entered into a contract permitting the railway company to operate buses in place of streetcars in the city of New York, and by its terms imposing the following obligations on the company whenever such substitution was effected:

" Article Thirteen    *    *    *

" Section 2. Anything in any statute, law, franchise, consent, local law, ordinance or requirement of any kind whatsoever to the contrary notwithstanding, when and as all street railway operation on any part of a street shall cease and bus operation superseding such street railway operation thereon shall be effected, to the extent and as provided in the Bus Agreements, then and from thenceforth the Railway Companies, and each of them, and their and each of their successors and assigns, shall not be under any duty, liability or obligation of any kind whatsoever to pave or repave or have or keep in repair any part of the railroad area in such part of such street, except to repair the existing pavement within the said railroad area so long as its tracks remain in such part of such street.    *    *    *

" Section 8. Subsequent to the cessation of the operation of street surface railway on any street, and until removal of Company Structures as hereinabove required, and while any property, title to which is in any Railway Company, remains in the street each Railway Company shall remain as fully liable for any and all claims for damage to persons and property occasioned by, or growing out of, the presence of its tracks and track structures and property in any street as it would have been with respect thereto prior to such cessation."

The liability of the railway company prior " to the cessation of the operation of street surface railway " was fixed by section 178 of the Railroad Law, which reads as follows:

" § 178. *Repair of streets; rate of speed; removal of ice and snow.*

" Every street surface railroad corporation, so long as it shall continue to use or maintain any of its tracks in any street, avenue or public place in any city or village, shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe; but nothing contained in this section shall require any street railroad corporation to make pavements or repairs over openings made in the streets by any person, municipality or corporation other than such street railroad corporation, for any purpose other than the pavement or repavement of the street. In case of the neglect of any corporation to make pavements or repairs after the expiration of twenty days' notice to do so, the local authorities may make the same at the expense of such corporation, and such authorities may make such reasonable regulations and ordinances as to the rate of speed, mode and use of tracks, and removal of ice and snow, as the interest or convenience of the public may require. A corporation whose agents or servants wilfully or negligently violate such an ordinance or regulation shall be liable to such city or village for a penalty not exceeding five hundred dollars, to be specified in such ordinance or regulation."

The city, under the common law, and the trustees, under section 178 of the Railroad Law, were each charged with similar duties to maintain the railway area of the street in good condition (*Hayes* v. *Brooklyn Heights R. R. Co.,* 200 N. Y. 183). The trustees contend that they were not active or primary wrongdoers, that they and the city were therefore joint tort-feasors *in pari delicto,* and that neither may recover against the other on any theory of implied indemnity (*Oceanic Steam Nav. Co.* v. *Compania Transatlantica Espanola,* 134 N. Y. 461; *New York Consolidated R. R. Co.* v. *Massachusetts Bonding & Ins. Co.,* 193 App. Div. 438, affd. 233 N. Y. 547; *McFall* v. *Compagnie Maritime Belge,* 304 N. Y. 314).

The Trial Justice was evidently inclined to agree with this contention of the trustees. He nevertheless directed judgment in favor of the city, on the theory that under the 1940 agreement the railway company assumed a contractual obligation to indemnify the city for claims such as these. On the record before us, however, as enlarged by stipulation, there is no basis for spelling out such an agreement of indemnification within the

four corners of the 1940 contract. But the contract does clearly provide that the change to bus operation does not in any respect change the obligation of the company to keep its track area in permanent repair, pursuant to section 178 of the Railroad Law.

The sole question posed on this appeal, therefore, is whether the effect of section 178 is to impose upon the trustees the initial and paramount duty of keeping the track area in repair, so that the city's liability is only secondary.

Section 98 of the Railroad Law of 1890 (L. 1890, ch. 565) was the predecessor to the present section 178, and they are almost identical in terms. Prior to the enactment of section 98 it was the practice of municipalities, before granting permission to lay railroad tracks upon their streets, to require a covenant that as partial consideration for the franchise the railway company would keep the pavement area under and adjacent to its tracks in good repair.

The leading case involving a claim over by a municipality against a railway company for liability under such a covenant is *City of Brooklyn* v. *Brooklyn City R. R. Co.* (47 N. Y. 475). After paying a judgment to a claimant injured as a result of a dangerous condition within the line of defendant's tracks the city brought an action on the covenant in the bond furnished it by the railway company. In affirming a judgment for the city the court stressed that when the defendant had contracted with the city to keep the streets in repair, '' in consideration of a license to use them to his benefit in an especial manner '', it undertook a duty to the public in the place and stead of the municipality (p. 485). The court went on to say that as between the two wrongdoers the railroad was the principal delinquent, '' the plaintiff having taken from the defendant a covenant to do that which, if it had been done as agreed, no harm would have befallen, had a right to rely thereon; and, though liable to third persons, are not so *in pari delicto* with the defendant as to be unable to sue and recover over '' (pp. 486–487).

In *Schuster* v. *Forty-Second St., Manhattanville & St. Nicholas Ave. Ry. Co.* (192 N. Y. 403, 406) there appears to be some suggestion that the provisions of section 178 imposed the same obligations upon street surface railways as had the contracts and bonds of the type construed in *City of Brooklyn* v. *Brooklyn City R. R. Co.* (*supra*). The force and effect of the statute were raised squarely by the following portion of the trial court's charge: '' That the duty that was laid upon the railroad company to keep its tracks in a condition of permanent repair is

an original duty, and that the railroad company cannot await the order of the local authorities before putting its railroad in a condition of permanent repair."

In affirming the judgment against the railway company, the court held that the right of supervision reserved to the city in section 178 did not relieve the railway of its positive duty to make repairs, as prescribed in the first provision of the statute. And the notice (then thirty days) which the city was required to give before it could proceed to make repairs at the expense of the railway company was not a condition precedent to imposing this initial duty on the railroad company. It did not apply to " a dangerous hole which needed immediate attention and repair in order to protect the public " (p. 408), but only to general repairs.

There was also some indication in the *Schuster* case that these provisions of section 98 (now § 178) were designed to take the place of the contracts previously entered into between municipalities and railway companies, and that the statute embraced most of the essential provisions of those contracts. In *McCarthy v. Brooklyn & Queens Tr. Corp.* (254 App. Div. 757, affd. 279 N. Y. 737) the accident was the result of faulty repavement by the city of that portion of the roadway between defendant's car tracks. The court said: " The purpose of the statute seems to be to charge the defendant with sole responsibility for maintenance, irrespective of the source of defects."

The holding in *City of Rochester* v. *Campbell* (123 N. Y. 405) is the main prop for the trustees' position. In that case the municipality sued a property owner for the amount of a judgment that had been recovered against it by a pedestrian who was injured as the result of the defective condition of a sidewalk adjoining defendant's property. There too the city's action was based on a charter provision casting the duty on an owner of land " to keep the sidewalks adjoining his lot or piece of land in good repair " (p. 409). The charter provision further resembled section 178 in that it gave the city the power " to repair any sidewalk, when the owner of the property shall neglect to repair the same for five days after written notice so to do has been served on him " (pp. 409–410); and it also gave the city the right to collect the expense of such repair from the property owner.

It was held that the injured pedestrian had no cause of action against the landowner, but only against the city. The primary duty of care was imposed upon the city as a concomitant of the responsibility for maintenance of sidewalks and highways

which it assumed upon acceptance of its charter from the State (*Conrad* v. *Village of Ithaca,* 16 N. Y. 158); and therefore the city could not assert a cross claim against the abutting owners. It was limited to the only measure of recovery set forth in the charter — the cost of making the requisite repairs. The court, however, reasserted as well-settled law that if a municipality has contracted with a third party to keep its street in repair and if an injured person has recovered damages due to such party's neglect in performing his contract, the municipality may in turn recover from the contracting party the damages it has been compelled to pay (p. 411). Most significantly, the opinion cites *City of Brooklyn* v. *Brooklyn City R. R. Co.* (*supra*) as authority for this statement.

In the *Schuster* case the court took pains to cite *City of Rochester* v. *Campbell* and to state expressly that it was distinguishable. While it did not isolate any specific ground of distinction it alluded to the contractual ancestry of section 178, which has been heretofore noted. It also observed that the City of Rochester had not claimed that the defendant landowner was negligent. In that case the alleged liability was predicated wholly upon the statutory obligation to repair and upon the assumption that the omission to perform imposed a liability in favor of persons injured as a result of such omission. In this case the city specifically charges the trustees with negligence.

In both the *Schuster* and *Brooklyn City R. R. Co.* cases (*supra*) there is also strong emphasis placed upon the fact that by contract or by statute the duty was laid upon the railroads to repair the roadway in consideration of permission or franchise to use the highways in a special manner for their own benefit. There is a line of cases which holds that when an abutting landowner makes any change in the construction of a sidewalk for his own accommodation and as a benefit to his property the law imposes upon him " the obligation of using due care to keep it in a suitable and safe condition for the public to walk over as a part of the sidewalk " (*Trustees of Canandaigua* v. *Foster,* 156 N. Y. 354, 359). This doctrine of implied duty, as enunciated in *Heacock* v. *Sherman* (14 Wend. 58, 60), is that the owner " is bound to repair * * * in consideration of private advantage ". (See, also, *Clifford* v. *Dam,* 81 N. Y. 52; *Nickelsburg* v. *City of New York,* 263 App. Div. 625; *Schrold* v. *City of New York,* 273 App. Div. 872, affd. 298 N. Y. 738; *Gordon* v. *City of Albany,* 278 App. Div. 233, motion for leave to appeal denied, 302 N. Y. 949, and *Ohrt* v. *City of Buffalo,* 281 App. Div. 344.)

The tracks were inserted in the pavement involved in this case by the railway company's predecessor, pursuant to franchise, for its own private advantage. The duty imposed by that circumstance and the reasons underlying it are well expressed in *City of Brooklyn* v. *Brooklyn City R. R. Co.* (47 N. Y. 475, 485, *supra*) : " When one contracts with that corporation [city] to keep any portion of those streets in repair, in consideration of a license to use them to his benefit in an especial manner, he in effect contracts to perform that duty to the public in the place and stead of the municipality, and the way is given over to him for that purpose, and he takes it into his care and charge therefor, and his failure to perform his contract is a failure to do that duty, and the damages which naturally and proximately result from non-performance are all the damages which naturally and proximately fall upon the corporation from the duty not being performed."

The *Schuster* case appears to dictate recovery upon the city's cross complaint pursuant to the provisions of section 178 of the Railroad Law. The judgment, insofar as it is appealed from, should be affirmed.

CALLAHAN, J. (dissenting). Both the City of New York and the trustees in reorganization of a street railway have been held liable in damages to a pedestrian, who was injured when her foot caught in a hole in a city street alongside of the rail of a former street railway. The hole had existed several months.

The sole question involved is whether the trustees are required to indemnify the city in view of the statutory duty cast on the railway by section 178 of the Railroad Law or under a written contract between these parties, and because any negligence of the city was merely passive.

The trial court found that the city and the railway were liable as active tort-feasors. It expressed the view that if section 178 was the sole basis of liability, there might be room for argument that the city could not recover over against the codefendant trustees. It found, however, that liability for indemnification existed by reason of a contract entered into between the parties on November 9, 1940, when buses were substituted for the railway.

This contract has been submitted to us, and we find two paragraphs relating to the duty of the railway to repair (art. XIII, §§ 2, 8). We construe these provisions to require the railway to repair so long as the tracks remain in the street to the same extent that it was obligated under section 178 of the Railroad

Law. Therefore, this contract merely provided that until the tracks were removed or the street repaved, the railway was to remain as fully liable as it had been under the statute and prior to the making of the contract.

There is no question that after the enactment of section 178 both the railway and the city remained liable to users of the highway for accidents due to lack of repair within the track area (*Binninger* v. *City of New York,* 177 N. Y. 199; *Schuster* v. *Forty-Second St., Manhattanville & St. Nicholas Ave. Ry. Co.,* 192 N. Y. 403; *Hayes* v. *Brooklyn Heights R. R. Co.,* 200 N. Y. 183; *Wilson* v. *City of Watertown,* 3 Hun 508).

The question here is whether both defendants were liable as co-tort-feasors *in pari delicto* as to an accident due to defective pavements, or whether the primary and paramount duty to repair was on the railway and the duty of the city only secondary and any negligence on its part merely passive, so that indemnification may be had by the city.

We reiterate that the proximate cause of the accident was a defect in the pavement due to lack of repair of said pavement, and not solely the presence of the tracks in the street. Under the common law, there was no duty on the railway's part to repair the pavement in the area of its tracks. Whatever duty exists in that respect is imposed by section 178.

Before passage of the statute, cities at times imposed a covenant in franchises requiring the railway to repair and keep the track area in safe condition (*City of Brooklyn* v. *Brooklyn City R. R. Co.,* 47 N. Y. 475). Here we have no contract, only an obligation to carry out the statutory duty, and, therefore, no covenant by the railway to discharge the city's duty to the public such as existed in the case cited. Hence, the sole issue in the case is the relative burden of the parties since the adoption of the statute.

The difficulty in defining the nature of the neglect of the two defendants in this case is that their duties arise from different sources, the city from the common-law obligation that municipalities are required to exercise due diligence in maintaining the safe condition of their streets, the railway by reason of the command of section 178 that it keep the zone area within and alongside its tracks in permanent repair.

Since the adoption of section 178, the duty of both defendants to the traveling public has been said to be the same (*Hayes* v. *Brooklyn Heights R. R. Co.,* 200 N. Y. 183, 186, *supra*). Undoubtedly, the measure of that duty is reasonable care on the part of both defendants. I agree that section 178 was adopted not only

for the protection of the traveling public, but also for the pecuniary advantage of the municipalities in securing for them payment by the railways of at least part of the paving costs. The obligation placed on railways to keep their track areas in permanent repair has been termed a command (*Conway* v. *City of Rochester*, 157 N. Y. 33). The statute imposes a continuing duty on the railway of an original nature, so that it may not delay or neglect to make repairs until required to do so by the city, and will be liable to an injured person even though the city made no request (*Schuster* v. *Forty-Second St., Manhattanville & St. Nicholas Ave. Ry. Co.*, 192 N. Y. 403, *supra*).

I believe, however, despite the duty to repair placed on the railway by the statute, that as to an accident of the present nature, not due solely to the presence of the tracks in the street, but due to failure to repair the pavement in the track area, the city had a concurrent or parallel duty of vigilant inspection to detect any lack of repair, and that a breach of this duty was active and not merely passive negligence.

The statute never intended to eliminate the municipality's duty to the public in the exercise of vigilance. Accordingly, the city could not disregard the duty of reasonable care on the assumption that the railway would perform its statutory obligation to repair. It could not remain passive and discharge its obligation to the traveling public, because it continued to have the duty of inspection and the obligation to demand repair by the railroad, and to proceed with repairs itself when the railway failed. To know when such steps were required, it had to be vigilant in inspecting its roadways, even in track areas.

We need not determine whether indemnity would be recoverable if the city had demanded action by the railway. In the instant case it appears that the city as well as the railway did nothing, so we may assume a failure by the city to inspect, which, in fact, the trial court found. This, in my opinion, was active negligence and made the city a co-tort-feasor.

It seems to me that the case is unlike *City of Brooklyn* v. *Brooklyn City R. R. Co.* (47 N. Y. 475, *supra*), where the city had obtained a covenant from the railway, as a condition of its franchise, that it would keep the track areas in safe condition. While the obligation to indemnify may exist without express covenant, the existence of such a covenant in relieving one party of liability may be a material factor. A covenant to indemnify against one's own negligence must be clearly expressed (*Dick* v. *Sunbright Steam Laundry Corp.*, 307 N. Y. 422, 424, and cases cited).

Where the law casts an obligation on more than one person to perform a duty and a covenantor agrees that he will discharge the entire duty of the covenantee, the law is not prone to find the covenantee *in pari delicto* with the covenantor, though they both remain liable to the public (*Tipaldi* v. *Riverside Memorial Chapel*, 273 App. Div. 414, affd. 298 N. Y. 686).

In the present instance, the trial court found both defendants guilty of active negligence. It specifically found that the city failed to inspect. The findings appear to be justified on the evidence, and the defendants being joint tort-feasors, they have the right of contribution (Civ. Prac. Act, § 211-a), but not indemnity.

Section 178 and its predecessor section have been on the statute books since 1884. It seems strange that no reported decision in all the intervening years indicates that the law affords a municipality the right to indemnity in a case like the present. None of the authorities cited in the majority opinion seem controlling.

Cases like *Trustees of Canandaigua* v. *Foster* (156 N. Y. 354) are inapplicable. They involve situations where abutting landowners place grates or vault covers in the highway for their convenience and permit them to fall into disrepair to the injury of the public. Here the damage was not created by the presence of a railway track in dangerous condition. It was due to lack of repair of the pavement. There would be no duty on the part of the railway to maintain street pavement in repair even in the track area, except for the provisions of section 178.

Nor do I believe that it is essential to the trustees to hold that the principle of *City of Rochester* v. *Campbell* (123 N. Y. 405) is applicable here. Though the ordinance involved there and the statute found here have many common or similar provisions, the situation of an abutting property owner (who is commanded to repair a sidewalk with no particular advantage in its use over the public generally) and a railway (which uses a city street for its private profit) are distinguishable.

The *Schuster* case (*supra*) relied on most strongly by the majority holds only that the obligation of the railway to the traveler is an original one and arises even in the absence of any request for repairs by the municipality. That ruling is readily understandable because of the language of section 178 requiring the railway to keep the track zones in permanent repair. But there is nothing inconsistent in holding the railway originally liable and holding the city for breach of a concurrent duty to exercise vigilance. No question of the city's liability was

involved in the *Schuster* case, and no question presented as to the right of indemnity.

Much that is said in the *Schuster* opinion confining certain provisions of the statute to repaving situations, and comparing the statutory provisions to those found in the covenant in the *City of Brooklyn* v. *Brooklyn City R. R. Co.* case (*supra*), has to do with the portions of section 178 defining the action to be taken by the city after demand for repair. These statements have no relevancy to an accident of the present nature based on failure to detect or remedy a dangerous condition.

There is, however, a statement in the *Schuster* opinion that has some relevancy. It is to the effect that the words in the statute — '' whenever required by them to do so '' — relate solely to supervision by the city of repairs being made by the railway. Were it not for this limited construction, one might well argue that these words indicated that the statute explicitly expressed the need for vigilance by the city to inspect and to require repairs by the railway, when necessary.

But whether this language is capable of such construction is academic, insofar as the question of indemnity is concerned, because whether the duties of the city as to vigilance and inspection are expressed in the statute or not, there can be little doubt that a common-law duty to exercise such vigilance remained on the city even after the adoption of section 178. Otherwise, there would be no basis for holding the city, and, concededly, it is liable to the public. It is liable because the care of its streets is a nondelegable duty. Section 178 recognizes this duty as continuing.

The failure of the city to exercise reasonable care shown by its omission to take any steps in the premises is, in my opinion, active negligence, which deprives it of any right to indemnity.

The judgment insofar as appealed from should be reversed, with costs, and judgment rendered in favor of the defendant trustees dismissing the cross complaint.

PECK, P. J., and COHN, J., concur with BOTEIN, J.; CALLAHAN, J., dissents in opinion in which BASTOW, J., concurs.

Judgment, so far as appealed from, affirmed, with costs to the respondent, the City of New York.