Dye, J.
(dissenting). Defendants, Trustees in reorganization of the Third Avenue Transit Corporation, a surface transit company (hereinafter Trustees) appeal as of right from that part of a judgment entered pursuant to an order of the Appellate Division, First Department, which affirmed by a divided court a judgment of the Supreme Court, Bronx County (a jury having been waived), entered on an order granting the city’s motion on the cross complaint for recovery over in the sum of $20,184 which was the amount awarded to the plaintiff in her action against both defendants. The plaintiff’s right to judgment is not challenged as, concededly, the trial court’s findings of actionable negligence on the part of each defendant as joint tort-feasors in pari delicto are amply supported by the evidence.
Briefly, the uncontradicted proof shows that the plaintiff, while crossing Melrose Avenue, Bronx, caught her foot in a hole underneath the rail of an unused trolley track; that the hole had existed for such a long time that both the railroad and the city knew — or should have known — of its existence and that failure to repair was negligence.
The Trustees contend in this court, as they did in the courts below, that the city — as a joint wrongdoer — is entitled to no more than a prorata contribution, the right to which the Trustees have conceded by paying one half of the plaintiff’s judgment (Civ. Prac. Act, § 211-a); that as a wrongdoer in pari delicto the city was barred, as a matter of law, from indemnification against its own negligence.
The law is settled that municipalities are under an original continuing and nondelegable duty to keep their highways and streets in good repair (City of Brooklyn v. Brooklyn City R. R. Co., 47 N. Y. 475, 485; Saulsbury v. Village of Ithaca, 94 N. Y. *99 27, 29; Markey v. County of Queens, 154 N. Y. 675; City of Rochester v. Campbell, 123 N. Y. 405, 411; Binninger v. City of New York, 177 N. Y. 199, 211; Hirsch v. Schwartz & Cohn, 256 N. Y. 7, 13).
However, the advent of street surface railroads required consideration of their duty owed to the municipality for their use of its streets, as well as the duty owed third persons. In the early case of Brooklyn v. Brooklyn City R. R. Co. (supra [1872]), we applied the usual rules of liability for breach of contract to hold that the railroad was under an obligation to reimburse the city for loss sustained in paying a judgment recovered in a common-law action by a third person who was injured when thrown into a hole within the line of defendant’s railway tracks. The railroad was operating its tracks in the street pursuant to a franchise which provided, among other things, that it (the railroad) would keep the pavement of the street “ in thorough repair within the tracks, and three feet on each side thereof, with the best water-stone, under the direction of such competent authority as the common council might designate.” In addition, faithful performance of the obligation was conditioned by an indemnity bond. The city sued the railroad on both the contract and this bond. The railroad defended on two grounds, first, that the requirement to make the repairs “ under direction of a designated authority ” was a condition precedent to liability, which we rejected with the comment that the permission granted to the railroad to use the street for a particular purpose and in a particular manner was for the railroad’s own benefit, in consideration of which it agreed to keep the area of the tracks in repair and thus do the duty which the city owed the public, failing which, it was answerable in damages to the city for the amount awarded to the injured third party. We also rejected the railroad’s defense based on the theory that the city, being a joint wrongdoer, was barred from recovery over by saying (pp. 486-487): “As' between these parties, the plaintiff having taken from the defendant a covenant to do that which, if it had been done as agreed, no harm would have befallen, had a right to rely thereon; and, though liable to third persons, are not so in pari delicto with the defendant as to be unable to sue and recover over.” Belying heavily on this contract case, the Trial Judge took the view that the sufficiency of the contract of November 9,1940 between the city and the Trustees’ predeces *100 sor, permitting a change, in the method of surface transportation from trolley cars to buses[1] and the consent of 1892 covering street railway operation on Melrose Avenue which it supplemented, implicitly obligated the Trustees to indemnify the city for any and all losses sustained by its failure to keep the track area in the public streets — a space between the rails of the tracks and two feet outside the tracks — pending removal of the rails, in good condition.
Such reliance was patently a misapplication of the contract. All of the judges in the court below agreed — and the parties do not now challenge — that the within contract merely recognized the Trustees as successors in interest and subject to the obligations borne by its predecessor prior to motorization as fixed by section 178 of the Railroad Law[2] (as amd. by L. 1921, *101 ch. 433; former Railroad Law, § 98, as amd. by L. 1892, ch. 676, without substantial change). In other words, we are not now dealing with a breach of contract obligation but, rather, with whether the statute creates such an obligation as to afford indemnity in favor of a joint wrongdoer. Strangely enough, since section 178 and its predecessor statutes of like import were enacted, the precise question here presented, indemnification of a city in the status of an adjudicated wrongdoer, has not heretofore been considered in this court, although there have been many situations where we have dealt with other aspects of the statute, such as liability for pavement (Conway v. City of Rochester, 157 N. Y. 33) and repavement (City of New York v. Whitridge, 227 N. Y. 180), which liability may not be waived even though consideration therefor be expressed (Conway v. City of Rochester, supra; Brooklyn, Queens Co. & S. R. R. Co. v. City of New York, 229 N. Y. 260; City of New York v. Dry Dock, E. B. & B. R. R. Co., 251 N. Y. 583, cert. denied 280 U. S. 603; City of New York v. Brooklyn, Q. Co. & S. R. R. Co., 213 N. Y. 634) and that when the railroad is the sole defendant in an action by an injured third party, he may recover against the railroad (McCarthy v. Brooklyn & Queens Tr. Corp., 254 App. Div. 757, affd. 279 N. Y. 737).
The city would have us construe section 178, as did a majority in the court below, as mandating complete indemnification, while the wording of the statute nowhere so provides in “ clear and unequivocal terms ”. It is contended that such a construction is compelled when ihe rationale of Trustees of Vil. of Canandaigua v. Foster (156 N. Y. 354) and Schuster v. Forty-second St., M. & St. N. Ave. Ry. Co. (192 N. Y. 403) is analogized and applied. In our view, this conclusion is not warranted. The circumstances surrounding each of those cases furnish a clear dis *102 tinction.. For instance, in Foster {supra), an abutting store owner had constructed a cellar grate in the sidewalk which fell into disrepair. A pedestrian was injured and sued the village in tort for breach of its common-law duty to provide safe sidewalks and had a judgment which the village paid. The village then sued the owner for reimbursement and had a judgment which we affirmed on the theory that the store owner, having erected the grates, was under the duty — while he remained in the exclusive possession, use and control thereof — to keep them in suitable and safe condition for the public to walk over. In other words, the 1 ‘ use ’ ’ doctrine was employed to apply the common-law theory relating to active and passive tort-feasance to create indemnification for loss incurred through primary or active fault as opposed to a secondary or passive liability created by law. Our situation is obviously quite different. Here we deal with the statutory liability of a transit company incident to the operation of its motorized buses in and along the public streets. In order to facilitate the furnishing of this necessary public transportation, a contract was entered into permitting a change in the type of service from trolley cars, formerly used by the company, to buses. In making this change-over to a more usable and convenient means of transportation without unnecessary delay and expense, the contract provided, among other things, for the maintenance of the track area until removal of the tracks “ as it would have been with respect thereto prior to such cessation ” (§ 8; n. 1, supra, p. 100). All judges in the court below have held — and this is not challenged on appeal — that liability is to be found in section 178 of the Railroad Law. That section, as we have seen, in no way relieves the city of its primary, continuing and nondelegable duty of inspection and repair in the first instance; it simply creates a corresponding duty on the railroad. According to the evidence, the hole complained of was in the pavement underneath the unused rail, so there is no claim that the rail was defective. The hole had existed for a long enough period of time to charge the city with notice of its existence, yet the city had done nothing toward repairing, nor had it served notice upon the transit company. Under such circumstances, the city may not escape the consequences of its negligence but, as a joint tort-feasor, must bear its share of the burden. As Justice Callahan so aptly stated: “ The statute never intended to *103 eliminate the municipality’s duty to the public in the exercise of vigilance.” (285 App. Div. 686.)
In contract cases it has long been the rule that indemnification against a party’s own negligence will not be implied but must be expressed in clear and unequivocal terms (Thompson-Starrett Co. v. Otis Elevator Co., 271 N. Y. 36; cf. Schwartz v. Merola Bros. Constr. Corp., 290 N. Y. 145) and indemnification may not be implied (Dick v. Sunbright Steam Laundry Corp., 307 N. Y. 422).
By the same token, the courts are reluctant to imply terms, or change existing laws, when dealing with problems of statutory construction. This is particularly so when the statute is designed or intended to effect a radical departure from a firmly established public policy. As a leading text writer has expressed it: “ Statutes of such nature are not to be construed to modify or abrogate the common law any further than is clearly expressed or justly implied from the language used. When presented with the inquiry whether a rule of the common law has in fact been changed by a statute, we approach that inquiry with the presumption that no such change was intended.” (McCaffrey on Statutory Construction, § 46, Statutes in Derogation of Common Law, p. 92) and as we ourselves have said, per Peckham, J.: “ the rule itself is too securely and firmly established and grounded in our jurisprudence to be altered other than by legislative interference ”. (Fitzgerald v. Quann, 109 N. Y. 441, 445.) Nowhere have we said that section 178 has in any way changed the common-law duty of a municipality to maintain its streets safely. By the same token, a careful reading of the section reveals no language changing the ancient common-law doctrine that as between tort-feasors in pari delicto, there is no indemnity — merely contribution (Civ. Prac. Act, § 211-a; McFall v. Compagnie Maritime Belge, 304 N. Y. 314; Fox v. Western New York Motor Lines, 257 N. Y. 305; Smith v. 167th St. S Walton Ave. Corp., 264 App. Div. 570).
Here the city and the trustees breached the same duty owed to the plaintiff. Each has been adjudged derelict for failure to inspect and repair. A careful reading of the statute reveals no language which may be construed as authorizing indemnification of the city for its joint wrongdoing. To allow the city full indemnification against the railroad, though the city admits that it was negligent, would do violence to the well-established rule *104 that indemnity is only created by clear and unequivocal language. To read section 178 as mandating indemnification under the circumstances of this case is not justified by the language used. If the Legislature intended placing such a burden upon the surface railroad in respect to indemnifying the city for its adjudicated wrongdoing, it should have said so. Such a change is for the Legislature and not for the courts.
Before closing, a word should be said about Schuster v. Forty-second St., M. & St. N. Ave. Ry. Co. (192 N. Y. 403, supra), which the city urges as authority to sustain the judgment below. There the plaintiff was awarded damages for injuries suffered when he stepped into a hole in the street within the track area. Only the railway was sued. It defended on the ground that it was not primarily liable within the provisions of the statute giving the city the right to make repairs after expiration of 20 days’ notice to do so. We held this was of no avail to the railroad, and that it in no way relieved the railroad of its original duty to inspect and repair and its liability to a third party when it failed to do so. The city was not a party, and no issue of indemnity was presented or considered. Here we deal only with indemnity — -and that as between wrongdoers.
The judgment appealed from should be reversed, with costs.

. “article thirteen * * *
“ Section 2. Anything in any statute, law, franchise, consent, local law, ordinance or requirement of any kind whatsoever to the contrary notwithstanding, when and as all street railway operation on any part of a street shall cease and bus operation superseding such street railway operation thereon shall be effected, to the extent and as provided in the Bus Agreements, then and from thenceforth the Railway Companies, and each of them, and their and each of their successors and assigns, shall not be under any duty, liability or obligation of any kind whatsoever to pave or repave or have or keep in repair any part of the railroad area in such part of such street, except to repair the existing pavement within the said railroad area so long as its tracks remain in such part of such street. * * *
“ Section 8. Subsequent to the cessation of the operation of street surface railway on any street, and until removal of Company Structures as hereinabove required, and while any property, title to which is in any Railway Company, remains in the street each Railway Company shall remain as fully liable for any and all claims for damage to persons and property occasioned by, or growing out of, the presence of its tracks and track structures and property in any street as it would have been with respect thereto prior to such cessation.”

. “§ 178. Repair of streets; rate of speed; removal of ice and snow.
“Every street surface railroad corporation, so long as it shall continue to use or maintain any of its tracks in any street, avenue or public place or in any city or village, shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe; but nothing contained in this section shall require any street railroad corporation to make pavements or repairs over openings made in the streets by any person, municipality or corporation other than such street *101 railroad corporation, for any purpose other than the pavement or repavement of the street. In case of the neglect of any corporation to make pavements or repairs after the expiration of twenty days’ notice to do so, the local authorities may make the same at the expense of such corporation, and such authorities may make such reasonable regulations and ordinances as to the rate of speed, mode and use of tracks, and removal of ice and snow, as the interest or convenience of the public may require. A corporation whose agents or servants wilfully or negligently violate such an ordinance or regulation shall be liable to such city or village for a penalty not exceeding five hundred dollars, to be specified in such ordinance or regulation.”